THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
LEAH S. STRICKLAND [SBN 265724]
lstrickland@swsslaw.com
MEI-YING M. IMANAKA [SBN 280472]
mimanaka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303

Attorneys for Defendant
MIDLAND CREDIT MANAGEMENT, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY D. SHADOW, an Individual on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>　　　　　Defendant. | Case No. 3:17-cv-02277-L-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**<br><br>Date:　　　July 8, 2019<br>Time:　　　10:30 a.m.<br>Courtroom:  5B<br><br>**No Hearing Pursuant to Local Rules]**<br><br>Judge: Hon. M. James Lorenz<br>Mag. Judge:  Hon. Mitchell D. Dembin |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ............................. 3

    A.      Background Facts. ......................................................................... 3

    B.      Midland Credit's Letter. ............................................................... 4

    C.      Midland Credit's Applicable Policies and Procedures. ..................... 5

III.    PROCEDURAL HISTORY ...................................................................... 5

IV.     RELEVANT LAW .................................................................................. 6

    A.      Standard on Summary Judgment. ................................................... 6

    B.      California Law on Reviving an Expired Statute of Limitations. ........... 6

    C.      Standard Under the FDCPA and the Rosenthal Act. ........................ 8

    D.      The Court Must Review Other Bases for Entering Judgment
        Before Deciding Midland Credit's Constitutional Challenge. ............ 9

V.      ARGUMENT ........................................................................................ 9

    A.      A Time-Barred Debt Can Lawfully Be Collected. ............................ 9

    B.      Given that a Partial Payment Cannot Revive an Expired Statute
        of Limitations in California, Plaintiff's Theory Requires a
        Novation, Which Is a Legal Impossibility Under the Undisputed
        Facts. ......................................................................................... 10

    C.      Plaintiff Would Not Be Sued, Regardless of How She Responded
        to the Letter. .............................................................................. 13

    D.      Plaintiff Has No Article III Standing to Raise Hypothetical
        Scenarios Wherein Plaintiff Might Inadvertently Trigger Section
        360 and Midland Funding Might Then Sue. .................................... 14

    E.      Binding Orders and Applicable Law from the CFPB and the
        California Legislature—Neither of Which Mention or Require
        Partial Payment Language—Dictate that Midland Credit Use the
        Exact Disclosure Language At Issue Here. ...................................... 16

    F.      Not Requiring Partial Payment Language Makes Particular Sense
        in States Like California Which Do Not Allow Partial Payments
        to Revive Expired Statutes Of Limitations. ..................................... 19

VI.    THE FDCPA AND ROSENTHAL ACT VIOLATE THE FIRST AND
       FOURTEENTH AMENDMENTS OF THE UNITED STATES
       CONSTITUTION ............................................................................................. 22

       A.    The Two Statutes Engage In Viewpoint Discrimination. ..................... 22

       B.    The Two Statutes Fail Strict Scrutiny. .................................................. 24

VII.   CONCLUSION .............................................................................................. 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alexander v. Louisiana*,
    405 U.S. 625 (1972) .......................................................................................... 9

*Ali Judah v. Total Card, Inc.*,
    No. 16-5881, 2017 U.S. Dist. LEXIS 81738 (D.N.J. May 30, 2017) ................. 21

*Am. Ass'n of Political Consultants, Inc. v. FCC*,
    No. 18-1588, 2019 U.S. App. LEXIS 12127 (4th Cir. Apr. 24, 2019) ............... 25

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    563 U.S. 125 (2011) ........................................................................................ 14

*Ashwander v. TVA*,
    297 U.S. 288 (1936) .......................................................................................... 9

*Bd. of Trs. v. Fox*,
    492 U.S. 469 (1989) ........................................................................................ 22

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) .................................................................. 15, 16

*Casillas v. Madison Ave. Assocs.*,
    No. 17-3162, 2019 U.S. App. LEXIS 16797 (7th Cir. June 4, 2019) ................. 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
    447 U.S. 557 (1980) ........................................................................................ 22

*Cohen v. Ltd. Fin. Servs. LP*,
    15-7422, 2016 U.S. Dist. LEXIS 91299 (D.N.J. Jul. 14, 2016) .......................... 22

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ........................................................................................ 15

*Davis v. Nordstrom, Inc.*,
    755 F.3d 1089 (9th Cir. 2014) ........................................................................... 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

*Diaz v. Kubler Corp.*,
　785 F.3d 1326 (9th Cir. 2015) .................................................................. 8

*Donohue v. Quick Collect, Inc.*,
　592 F.3d 1027 (9th Cir. 2010) ................................................... 14, 24, 25

*First Nat'l Bank v. Pray*,
　288 F. 675 (9th Cir. 1923) ................................................................... 7, 11

*Freyermuth v. Credit Bureau Servs., Inc.*,
　248 F.3d 767 (8th Cir. 2001) ................................................................... 10

*Genova v. Total Card, Inc.*,
　193 F. Supp. 3d 360 (D.N.J. 2016) (appeal dismissed)........................... 21

*Gertz v. Robert Welch*,
　418 U.S. 323 (1974) ............................................................................... 25

*Guerrero v. RJM Acquisitions LLC*,
　499 F.3d 926 (9th Cir. 2007) ................................................................... 8

*Gutierrez v. Portfolio Recovery Assocs., LLC*,
　2019 U.S. Dist. LEXIS 18553 (C.D. Cal. Feb. 1, 2019) ....................... 17

*Horphag Research Ltd. v. Garcia*,
　475 F.3d 1029 (9th Cir. 2007) ................................................................. 6

*Huertas v. Galaxy Asset. Mgmt.*,
　641 F.3d 28 (3rd Cir. 2011)...................................................................... 9

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
　559 U.S. 573 (2010) ............................................................................... 23

*Jones v. Synergetic Commun., Inc.*,
　No. 18-cv-1860-BAS-RBB, 2018 U.S. Dist. LEXIS 198087 (S.D.
　Cal. Nov. 20, 2018) ..................................................................... 7, 12, 18

*Kislin v. Northalnd Grp., Inc.*,
　No. 16-4533, 2017 U.S. Dist. LEXIS 83197 (D.N.J. Apr. 19, 2017)
　(appeal dismissed) ................................................................................. 21

*Koerner v. Midland Credit Mgmt.*,
　347 F. Supp. 3d 1143 (M.D. Fla. 2018) ................................................. 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001) ...................................................................... 23

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................... 15

*Matal v. Tam*,
   137 S. Ct. 1744 (2017) ......................................................... 22, 23, 24

*Midland Funding, LLC v. Johnson*,
   137 S. Ct. 1407 (2017) .................................................................... 9

*Miran v. Convergent Outsourcing, Inc.*,
   No. 16-CV-0692-AJB-(JMA), 2016 U.S. Dist. LEXIS 173030 (S.D.
   Cal. Dec. 13, 2016) ......................................................................... 9

*Obsidian Fin. Grp., LLC v. Cox*,
   740 F.3d 1284 (9th Cir. 2014) ....................................................... 25

*R. A. V. v. St. Paul*,
   505 U.S. 377 (1992) ...................................................................... 23

*Rhoades v. Avon Products, Inc.*,
   504 F.3d 1151 (9th Cir. 2007) ....................................................... 14

*Riggs v. Prober & Raphael*,
   681 F.3d 1097 (9th Cir. 2012) ......................................................... 8

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
   515 U.S. 819 (1995) ................................................................. 23, 24

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ........................................................... 6

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ...................................................................... 23

*Southern Pacific Transp. Co. v. City of Los Angeles*,
   922 F.2d 498 (9th Cir. 1990) ......................................................... 15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ...................... 15

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ................................................. 15, 16

*Thomas v. Union Carbide Agr. Products Co.*,
    473 U.S. 568 (1985) ...................................................................................... 15

*United States v. Asset Acceptance, LLC*,
    No. 8:12-cv-00182 (M.D. Fla. Jan. 31, 2012) (RJN Ex. B) .................................. 17

**California Cases**

*Adams v. Paul*,
    11 Cal. 4th 583 (1995) (Kennard, J., concurring) ..................................... 9

*AIU Ins. Co. v. Superior Court*
    51 Cal. 3d 807, 821-22 (1990) ...................................................................... 11

*Allen v. Sully-Miller Contracting Co.*,
    28 Cal. 4th 222 (2002) .................................................................................. 21

*Artukovich v. Astendorf*,
    125 P.2d 16 (Cal. 1942) ................................................................................ 20

*Asmus v. Pac. Bell*,
    23 Cal. 4th 1 (2000) ...................................................................................... 12

*Bridge v. Conn. Mut. Life Ins. Co.*,
    167 Cal. 774 (1914) ......................................................................................... 9

*Eilke v. Rice*,
    45 Cal. 2d 66 (1955) ................................................................................ 7, 10

*Heinlin v. Castro*,
    22 Cal. 100 (1863) ........................................................................................... 1

*Isobe v. Unemployment Ins. Appeals Bd.*,
    12 Cal. 3d 584 (1974) .................................................................................. 20

*Pac. Sw. Realty Co. v. Cty. of L.A.*,
    1 Cal. 4th 155 (1991) .................................................................................... 20

*People v. Cornett*,
    53 Cal. 4th 1261 (2012) ............................................................................... 21

*People v. Pieters*,
    52 Cal. 3d 894 (1991) ................................................................................... 20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

*People v. Williams*,
  16 Cal. 3d 663 (1976) .................................................................................... 21

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) .................. 11

*Weddington Prods., Inc. v. Flick*,
  60 Cal. App. 4th 793 (1998) ............................................................................. 7

*Wells Fargo Bank v. Bank of Am.*,
  32 Cal. App. 4th 424 (1995) ......................................................................... 7, 10

*Western Coal & Mining Co. v. Jones*
  27 Cal.2d 819 (1946) ..................................................................................... 11

**Federal Statutes**

15 U.S.C. § 1692(e) ........................................................................................ 24
  § 1692a .......................................................................................................... 24
  § 1692a(6)(C), (F) .......................................................................................... 25
  § 1692e .................................................................................................... 8, 14
  §§ 1692e and 1692f ........................................................................................ 24
  § 1692f .............................................................................................................. 8
  § 1692k(e) ...................................................................................................... 17

**California Statutes**

Cal. Civ. Code
  § 1532 ............................................................................................................. 7
  § 1550 ............................................................................................................. 7
  § 1641 ........................................................................................................... 11
  §§ 1788 *et seq.* ........................................................................................ 2, 24
  § 1788.17 ...................................................................................................... 24
  § 1788.52(d) .................................................................................................. 16

Cal. Code Civ. Proc.
  § 337 ............................................................................................................. 21
  § 360 ........................................................................................................ *passim*

**Other Authorities**

14 Cal. Jur. 3d Contracts § 20 ......................................................................... 12

1 Corbin on Contracts (1993) § 1.23 ............................................................... 12

Fed. R. Civ. Proc. 56...................................................................................................... 6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

# I.   <u>INTRODUCTION</u>

In this class action, Sky Shadow ("**Plaintiff**" and/or "**Shadow**") asserts that Midland Credit Management, Inc. ("**Midland Credit**") violated the Fair Debt Collection Practices Act ("**FDCPA**") when it sent her a letter attempting to collect her valid and outstanding, but time-barred debt. The letter offered three options for paying off the debt, two of which involved payments over time. The letter also contained a clear and unambiguous disclosure stating: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." (Hereafter, the "**Disclosure**.") Shadow alleges the Disclosure was misleading and unfair because it failed to advise her that, had she accepted one of the two offers for making payments, she could have inadvertently "revived" the expired statute of limitations. Plaintiff's theories are legally and factually meritless and, as a result, Midland Credit is entitled to summary judgment.

As an initial matter, Shadow's flawed theory assumes that, under California law, it is possible for a partial payment alone to revive an expired statute of limitations. Not so. It is well-established that a mere partial payment on a debt does not revive an expired statute of limitations. *See* Cal. Code Civ. Proc. § 360 ("**Section 360**"); *Heinlin v. Castro*, 22 Cal. 100, 102 (1863). Instead, to revive an expired statute of limitations, the party who owes the debt must enter into a signed written acknowledgment reviving the debt. In other words, a revival in California (*e.g.*, under Section 360) requires a novation—the creation of an entirely new agreement, not the mere extension of an old one. Establishing such a novation is not easy; it is an involved process, designed to ensure a meeting of the minds in circumstances where the debtor's agreement on revival is doubtful. As detailed herein, however, there is no hypothetical response that Shadow could have submitted to Midland Credit in response to the letter that would have resulted in a novation, because on this issue a meeting of the minds between Shadow and Midland Credit was facially impossible.

1    Even if it were possible under California law for partial payments alone to

2    "revive" an expired statute of limitations—it is not—the undisputed evidence shows

3    that Midland Credit would not have revived the statute of limitations, regardless of

4    how Shadow responded to the letter. This is because Midland Credit has a long-

5    standing and established policy of never reviving expired statutes of limitations for

6    any reason, including if the consumer submits a payment on the debt. Additionally,

7    Midland Credit has a policy of never reselling debt, meaning that no future owner

8    could ever contend that the statute of limitations associated with Shadow's debt was

9    revived. This is, of course, why the letter in this case told Shadow that Midland

10   Credit would never sue her on the account. At Midland Credit, once the statute of

11   limitations on a debt expires, it is expired permanently. To the extent Shadow

12   hypothesizes scenarios to circumvent this reality, her claim fails to present a "concrete

13   and particularized" injury in fact, and she has no Article III standing to raise it.

14   In addition, California law makes clear that the Disclosure, "The law limits

15   how long you can be sued on a debt. Because of the age of your debt, we will not

16   sue you for it," is not misleading, and that nothing more is required to be included in

17   a letter attempting to collect a time-barred debt. Specifically, since 2014 California's

18   Fair Debt Buying Practices Act, Cal. Civ. Code §§ 1788.50, *et seq.* (the "**Debt**

19   **Buying Act**") has required debt buyers to use the exact language—no more and no

20   less—that Midland Credit used in the letter. Adding to that, the California

21   legislature recently amended California's Rosenthal Fair Debt Collection Practices

22   Act, Cal. Civ. Code §§ 1788 *et seq.* (the "**Rosenthal Act**") to require debt collectors

23   to use that same language. In addition, the terms of the 2015 Consent Order that

24   Midland Credit entered into with the Consumer Financial Protection Bureau

25   ("**CFPB**") require Midland Credit to use this exact disclosure. In short, no fewer

26   than three sources (two of which were binding on Midland Credit at the time it sent

27   the letter at issue) require the use of the verbatim language that was in Shadow's

28   letter. These sources are highly instructive, and severely undermine Plaintiff's

contention that the Disclosure was somehow misleading. Notably, neither the CFPB nor the California legislature has ever required adding language related to whether partial payments may revive an expired statute of limitations. Indeed, the CFPB has determined that such language could actually be confusing to consumers.

Finally, if the Court decides that there is a claim that survives summary judgment here—which there is not for the multiple reasons explained above—the Court must decide if the provisions of the FDCPA and Rosenthal Act at issue are constitutional under the First and Fourteenth Amendments of the United States Constitution. This is an issue of first impression, to Midland Credit's knowledge. As explained in Section VI, below, the two statutes discriminate between the speech of debt collectors and debtors, while the two parties speak privately on the same topic and with similar motives. This disparate treatment is based solely on the identity and/or viewpoint of the speaker, and constitutes unconstitutional viewpoint discrimination in violation of the First and Fourteenth Amendments.

For all of these reasons and the reasons set forth below, Shadow's claims fail, and Midland Credit is entitled to judgment as a matter of law.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   Background Facts.

Non-party Midland Funding LLC ("Midland Funding") is a buyer of distressed asset portfolios that contracts with its corporate affiliate, Midland Credit, to service the debts Midland Funding owns. Midland Funding is the current owner of the receivable for a Chase Bank USA, N.A. Visa or MasterCard account in the name of Sky Shadow, account number ending 5243 (the "**Chase Account**"). (*See* Declaration of Jared McClure ["**McClure Decl.**"] at ¶¶ 4-6 & Exhibits ["**Exs.**"] 1, 2.) Midland Funding assigned the Chase Account to Midland Credit for servicing. (McClure Decl. ¶ 7.) The last time Shadow paid on the Chase Account was January 6, 2011. (McClure Decl. ¶¶ 7-8 & Exs. 2, 3.) It is undisputed for purposes of this

1  action that the statute of limitations to sue to collect on the Chase Account expired

2  before November 30, 2016. (McClure Decl. ¶ 9.)

3       **B.**       **Midland Credit's Letter.**

4       Midland Credit sent Shadow a letter on or around November 30, 2016 (the

5  "**Letter**"), similar to Exhibit A to Shadow's First Amended Complaint ("**FAC**").

6  However, Exhibit A to the FAC appears distorted and cuts off portions of the Letter.

7  (McClure Decl. ¶ 11.) A true and correct copy of the Letter is attached as **Exhibit 4**

8  to the accompanying McClure Decl. The Letter is sized to be printed on paper that is

9  8.5 inches wide by 15 inches long. (*Id.* ¶ 11 & Ex. 4.) Approximately the top 21% of

10  the Letter consists of Midland Credit's and the recipient's address information. The

11  remainder of the Letter consists of the body of the message; a space for statutory

12  disclosures required in various jurisdictions; Midland Credit's contact information;

13  and a payment coupon at the bottom. Other disclosures required by various laws

14  appear on the back of the Letter. (*Id.* ¶ 12 & Ex. 4.)

15       The Letter listed three potential options for paying off the debt. One was a

16  one-payment option that provided a 40% discount off the current balance; the

17  second option offered a six-month payoff plan for a 20% discount; and the third

18  option noted the debtor could make payments as low as $50 per month. (Ex. 4.) To

19  take advantage of any of the offers in the Letter, as the Letter itself states, Shadow

20  could have simply called Midland Credit or gone online. (McClure Decl. ¶ 15.)

21  However, Shadow did not respond to the Letter in any way, and has never made any

22  payments to Midland Credit on the Chase Account. (*Id.* ¶¶ 15-16.)

23       The following disclosure appears on the first page of the Letter, just under the

24  body of the Letter and at the top of the disclosure section, which is otherwise blank:

25  "The law limits how long you can be sued on a debt. Because of the age of your

26  debt, we will not sue you for it. If you do not pay the debt, we may continue to

27  report it to the credit reporting agencies as unpaid." (Ex. 4.) The Disclosure is in the

28  same font as the majority of the Letter. (McClure Decl. ¶ 13.)

Shadow alleges that the Disclosure is misleading or confusing, because, according to Shadow, "[i]f Plaintiff made even one partial payment of a single dollar on the alleged debt, the statute of limitations on the alleged debt would be revived and the Defendant would have another four (4) years from the date of the partial payment (the applicable statute of limitations under California law) to sue Plaintiff for the entire amount of the alleged debt." (FAC ¶ 35 [Dkt. No. 4].) Shadow asserts Midland Credit should have told her that "if the Plaintiff accepts any of the payment plan options, *i.e.* # 2 or #3, and/or makes even a single partial payment, it may revive the statute of limitations and permit Defendant to sue the Plaintiff to collect the full balance of the debt." (*Id.* ¶¶ 34, 39.)

### C. Midland Credit's Applicable Policies and Procedures.

At the time Midland Credit sent the Letter through the present day, Midland Credit and Midland Funding have had a written policy and procedure providing that, after the statute of limitations has run on a debt, they will not use any payments made towards the debt to recalculate or revive the statute of limitations, even if allowed under state law. Midland Credit and Midland Funding follow that policy. (McClure Decl. ¶¶ 18-19 & Exs. 5, 6.) Midland Credit's and Midland Funding's policies also provide that lawsuits must not be initiated to collect debts that are outside the statute of limitations, and they follow that policy. (*Id.* at ¶ 17 & Ex. 5.) Midland Credit's and Midland Funding's written policies also provide that Midland Funding does not sell accounts to third parties. They also follow that policy. (*Id.* at ¶ 24 & Ex 7, CFPB Consent Order [Request for Judicial Notice ("RJN") Ex. A[1]].)

### III. PROCEDURAL HISTORY

On November 8, 2017, Shadow filed this putative class action against Midland Credit seeking damages and attorneys' fees for Midland Credit's alleged

---

[1] Midland Credit asks this Court to take judicial notice of the Consent Order (RJN Ex. A), and other documents referenced in its RJN and herein. *See* RJN, Exs. A-G.

1  violations of the FDCPA and the Rosenthal Act. (*See* Complaint [Dkt. No. 1].)

2  Thereafter, on November 16, 2017, Plaintiff filed a FAC asserting the same core

3  claims. (*See* FAC [Dkt. No. 4].)

4       On January 16, 2018, Midland Credit filed a motion to dismiss Plaintiff's

5  claims, which the Court denied on September 13, 2018. (Dkt. Nos. 6, 12.) Midland

6  Credit now moves for summary judgment.

7  **IV.**   <u>**RELEVANT LAW**</u>

8      **A.**   <u>**Standard on Summary Judgment.**</u>

9       The standard for summary judgment is well known: "The moving party bears

10  the initial burden to demonstrate the absence of any genuine issue of material fact."

11  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation

12  omitted); Fed. R. Civ. Proc. 56. Once the moving party meets its burden, the burden

13  shifts to the nonmoving party to set forth specific facts showing that there is a

14  genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "One of

15  the principal purposes of the summary judgment rule is to isolate and dispose of

16  factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

17  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to

18  raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty*

19  *Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007).

20      **B.**   <u>**California Law on Reviving an Expired Statute of Limitations.**</u>

21       Central to the determination of the issue here is what California requires for

22  the statute of limitations on a time-barred debt to be "revived." Importantly,

23  California law does not provide for the revival of a statute of limitations based on

24  partial payment alone. Instead, as the parties agree, and the Court found at the

25  motion-to-dismiss stage, California law requires a written acknowledgment of the

26  debt, signed by the debtor, for there ever to be a potential revival of the statute of

27  limitations. Cal. Code Civ. Proc § 360; *see also* Sept. 13, 2018 Order, p. 5:8-12

28  (Dkt. No. 12). In short, revival in California requires a novation—the creation of an

1  entirely new agreement, not the mere extension of an old one. *See Eilke v. Rice*, 45

2  Cal. 2d 66, 73 (1955) ("The acknowledgment of a debt already barred by the statute

3  gives rise to a new contract and a new cause of action dating from the

4  acknowledgment."); *Wells Fargo Bank v. Bank of Am.*, 32 Cal. App. 4th 424, 431

5  (1995) ("*Wells Fargo*") ("Novation is the substitution of a new obligation for an

6  existing one."); MTD Oppo., pp. 12:25-13:3 (Dkt. No. 10).[2]

7      Establishing such a novation under Section 360 is not a simple matter, and

8  particularly in these circumstances it is not something that a debtor could do by

9  mistake. The process under Section 360 is designed to ensure a meeting of the

10  minds in circumstances where the debtor's agreement on revival is doubtful. *See,*

11  *e.g.*, *First Nat'l Bank v. Pray*, 288 F. 675, 679 (9th Cir. 1923) ("*Pray*") (17 letters

12  exchanged between debtor and creditor, eight of which the debtor signed, in which

13  debtor "acknowledge[d] the existence of the note," did <u>not</u> satisfy Section 360).

14  "'Novation is made by contract, and is subject to all the rules concerning contracts

15  in general.'" *Wells Fargo*, 32 Cal. App. 4th at 431(*quoting* Cal. Civ. Code § 1532).

16  Contract formation requires consent. *See* Cal. Civ. Code § 1550 (contract formation

17  requires the parties' consent); *id.* § 1565 (consent must be mutual); *id.* § 1580

18  (mutual consent means "the parties all agree upon the same thing in the same

19  sense."). It is black letter law that "[i]f no meeting of the minds has occurred on the

20  material terms of a contract, basic contract law provides that no contract formation

21  has occurred." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998).

22      Importantly, a debtor cannot be deceived into starting a new contract because

23  "deception cannot plausibly show a meeting of the minds or an agreement as to the

24  terms of the novation sufficient to create a novation." *Jones v. Synergetic Commun.,*

25

---

26  [2] Because Shadow and Midland Credit reside in California and the Letter was sent to
the Plaintiff's addresses in California, California law applies to the issue of whether

27  a new contract was formed. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir.

28  2014) ("state law principles… govern contract formation").

1  *Inc.*, No. 18-cv-1860-BAS-RBB, 2018 U.S. Dist. LEXIS 198087, at \*24 (S.D. Cal.

2  Nov. 20, 2018) ("*Synergetic*"). Here, Shadow did not respond to the Letter in any

3  way. (McClure Decl. ¶¶ 15-16.)

4  **C.      Standard Under the FDCPA and the Rosenthal Act.**

5  Shadow alleges Midland Credit violated 15 U.S.C. sections 1692e,

6  1692e(2)(A), 1692e(10), and 1692f. (FAC ¶¶ 38-63 [Dkt. No. 4].) Section 1692e

7  prohibits the use of "any false, deceptive, or misleading representation or means in

8  connection with the collection of any debt." Similarly, Section 1692e(10) prohibits

9  "[t]he use of any false representation or deceptive means to collect or attempt to

10  collect any debt or to obtain information concerning a consumer." Section 1692f

11  prohibits the use of "unfair or unconscionable means to collect or attempt to collect

12  any debt." 15 U.S.C. § 1692f. Section 1692e(2)(A) prohibits "[t]he false

13  representation of – (A) the character, amount, or legal status of any debt." 15 U.S.C.

14  § 1692e(2)(A). Plaintiff does not allege that Midland Credit misrepresented the

15  "amount" of the debt. (*See gen*. FAC.) In other words, the FAC does not assert that

16  the Letter misstated the type of Plaintiff's debt nor its amount. Thus, to the extent

17  Plaintiff has alleged any violation of Section 1692e(2)(A), it is based on a purported

18  false representation of the character or legal status of the debt.

19  To determine whether a debt collector violates these provisions of the

20  FDCPA, the Court looks at whether "the least sophisticated debtor would 'likely be

21  misled' by a communication." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926,

22  934 (9th Cir. 2007).

23  Shadow's third claim for relief asserts a claim under the Rosenthal Act, and is

24  based on the same conduct as her FDCPA claim. "The Rosenthal Act 'mimics or

25  incorporates by reference the FDCPA's requirements . . . and makes available the

26  FDCPA's remedies for violations.' *Riggs v. Prober & Raphael*, 681 F.3d 1097,

27  1100 (9th Cir. 2012)." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1328 (9th Cir. 2015).

28  Plaintiff's Rosenthal Act claim thus rises or falls with her FDCPA claims.

**D.    The Court Must Review Other Bases for Entering Judgment Before Deciding Midland Credit's Constitutional Challenge.**

In Section VI, below, Midland Credit raises a constitutional challenge to the FDCPA and Rosenthal Act. Federal courts avoid making a decision on constitutional questions "unless absolutely necessary to a decision of the case." *Ashwander v. TVA*, 297 U.S. 288, 347 (1936). Thus, before this Court addresses the constitutional question, it should first determine whether it can grant Midland Credit's motion on the other bases it raises. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). As discussed below, there are many bases for it to do so.

## V.    ARGUMENT

### A.    A Time-Barred Debt Can Lawfully Be Collected.

It is well established (including by the U.S. Supreme Court in a recent case) that a time-barred debt *can* lawfully be collected, and Shadow does not claim otherwise. Where state law "provides that a creditor has the right to payment of a debt even after the limitations period has expired," seeking payment on that debt is no violation of the FDCPA (or its state law equivalents). *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017). In California, the statute of limitations simply sets out a defense in a lawsuit; it has no effect on the validity of the obligation. *See Adams v. Paul*, 11 Cal. 4th 583, 597 (1995) (Kennard, J., concurring) ("Because in civil actions the statute of limitations is a law of procedure, it affects only the remedy, not the substantive right or obligation."); *Bridge v. Conn. Mut. Life Ins. Co.*, 167 Cal. 774, 779 (1914) ("The statute of limitations… does not extinguish, or even impair, the obligation of the debtor."). Indeed, as Judge Battaglia has recognized, "seeking voluntary repayment of a time-barred debt 'so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts' is not considered a violation of the FDCPA." *Miran v. Convergent Outsourcing, Inc.*, No. 16-CV-0692-AJB-(JMA), 2016 U.S. Dist. LEXIS 173030, at *17 (S.D. Cal. Dec. 13, 2016); *see also Huertas v. Galaxy Asset.*

1  *Mgmt.*, 641 F.3d 28, 33-34 (3rd Cir. 2011); *Freyermuth v. Credit Bureau Servs.,*

2  *Inc.*, 248 F.3d 767, 771 (8th Cir. 2001).

3        Here, in its order denying Midland Credit's motion to dismiss, the Court

4  stated that Shadow was asserting a claim that the Letter was misleading "because

5  [the Letter] attempted to enforce a time-barred debt in violation of the FDCPA… as

6  well as the Rosenthal Act." (Sept. 13 Order, p. 3:20-22 [Dkt. No. 12].) Based on this

7  characterization, the Court agreed that "the Letter at first blush creates the

8  impression that the debt can be collected." (*Id.*, p. 4:18-19.) A close examination of

9  the FAC, however, shows that Shadow is not asserting (nor could she under the

10  above law) that the debt is not valid, or could not be collected. (*See* FAC ¶¶ 34, 35,

11  36, 39, 40, 48, 52, 53.) Rather, she contends only that the Disclosure was misleading

12  because it failed to advise her that making a single payment could revive the expired

13  statute of limitations. (FAC ¶¶ 34-36, 39, 40, 48, 52, 53.)

14  **B.    Given that a Partial Payment Cannot Revive an Expired Statute of Limitations in California, Plaintiff's Theory Requires a Novation,**

15  **Which Is a Legal Impossibility Under the Undisputed Facts.**

16        There is no dispute that California law does not provide for the revival of a

17  statute of limitations based on payment alone. Instead, the parties and the Court

18  agree that California law requires a written acknowledgment of the debt, signed by

19  the debtor. Cal. Code Civ. Proc § 360; *see also* Sept. 13, 2018 Order, p. 5:8-12. As

20  stated above, Section 360 requires a novation, *see Eilke*, 45 Cal. 2d at 73, and such a

21  novation would be "'subject to all the rules concerning contracts in general.'" *Wells*

22  *Fargo*, 32 Cal. App. 4th at 431(*quoting* Cal. Civ. Code § 1532). Under basic

23  California contract law, the formation of a contract requires consent and a meeting

24  of the minds. In other words, the parties would have had to have had a bilateral

25  agreement that a new contract was starting, and that the previously-expired statute

26  of limitations was being revived in conjunction with that new agreement. *See Eilke*,

27  45 Cal. 2d at 73. Under these principles, there is simply no possibility that Shadow

28  could have been "tricked" into entering a new contract, as she alleges.

First, California and Ninth Circuit precedent make it impossible for Shadow to trigger Section 360 simply by responding to Midland Credit's letter, unless Shadow was ***deliberately*** attempting to create a new contract. She could not do so simply by paying and "inadvertently" reviving the statute of limitations. For example, in *Pray*, the debtor and the creditor exchanged 17 letters—eight of which were signed by the debtor—in which the debtor "acknowledge[d] the existence of the note" at issue. 288 F. at 677. The Ninth Circuit, however, held that such extensive exchanges did not qualify as a novation under Section 360's strict requirements because the letters did not unambiguously and unconditionally "acknowledge or promise a new or continuing contract." *Id*. at 679; *see also Western Coal & Mining Co. v. Jones*, 27 Cal. 2d 819, 823 (1946) (admission of debt must be unqualified, without intimation of intent to refuse payment). It should be remembered that Shadow did not, in fact, respond to the Letter in any way. Notably, in this case, any hypothetical chain of correspondence between Shadow and Midland Credit sufficient to create a new contract would have necessarily begun with the Letter and the Disclosure. In other words, the strict requirements of Section 360 to revive the statute of limitations could not have been met, because of the inclusion of the Disclosure's provision that Midland Credit "will not sue."

There is nothing particularly unusual about this result. "[T]he interpretation of a contract must give effect to the 'mutual intention' of the parties." *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "'Under statutory rules of contract interpretation, the mutual intention of the parties… is to be inferred, if possible, solely from the written provisions of the contract. (*Id*., § 1639.)'" *Id.* (*quoting AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821-22 (1990)). Here, Midland Credit's promise not to sue would have been incorporated into the terms of whatever agreement Shadow contends would have been formed based on the Letter. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably

1  practicable, each clause helping to interpret the other.").

2      Shadow has previously argued Midland Credit was trying to trick her into

3  entering a new four-year agreement, but as Judge Bashant in *Synergetic* found when

4  a plaintiff made a similar argument in a nearly identical case related to the

5  disclosures in time-barred debt letters, "deception cannot plausibly show a meeting

6  of the minds or an agreement as to the terms of the novation sufficient to create a

7  novation." 2018 U.S. Dist. LEXIS 198087, at *24. Moreover, based on Midland

8  Credit's undisputed written policy never to revive an expired statute of limitations,

9  nor to sue once the original statute of limitations expires (even where state law

10  permits) (McClure Decl. ¶¶ 17-19), the Letter cannot, as a matter of law, represent

11  evidence that Midland Credit intended to enter into a new contract enforceable

12  against Shadow. There is, moreover, no evidence that Shadow ever responded to the

13  Letter, or intended to respond to it in any way. (*Id.* ¶¶ 15-16.)

14      Finally, the only enforceable agreement that could have been formed as the

15  result of the Letter would have been unilateral—enforceable only against <u>Midland</u>

16  <u>Credit</u>, and <u>never</u> against Shadow. The Letter requested only Shadow's voluntary

17  payments on the debt; it did <u>not</u> request Shadow's promise to pay the debt, written

18  or otherwise. In other words, the Letter offered a unilateral contract. In a unilateral

19  contract, "there is only one promisor, who is under an enforceable legal duty. (1

20  Corbin on Contracts (1993) § 1.23, p. 87.) The promise is given in consideration of

21  the promisee's act or forbearance." *Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000). The

22  promisee (here, Shadow) is never bound in such a situation. "[A] promise

23  conditioned on performance of some act, <u>without a return promise to do that act</u>, is

24  not a contract but is known as a *nudum pactum*." 14 Cal. Jur. 3d Contracts § 20

25  (emphasis added). "When the promisee performs, however, the promise becomes

26  obligatory." *Id.* Midland Credit freely concedes that had Shadow performed the

27  terms of one of the offers, she could have enforced the discounts in the Letter

28  against Midland Credit. However, the only party who could have potentially been

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1  bound under the terms of the Letter was Midland Credit, not Shadow.

2  In short, interpreting the Letter as a whole, which the Court must, the

3  Disclosure that Midland Credit would not sue is inconsistent with any interpretation

4  that the Letter could have created a new contract binding on Shadow, or an

5  agreement on which Midland Credit could have sued. The Disclosure was therefore

6  not misleading, because there was simply no scenario in which Shadow could have

7  responded to the Letter in a way that would have renewed the statute of limitations

8  or created a new agreement binding on Shadow. For these reasons as well, summary

9  judgment should be entered on Shadow's FDCPA and Rosenthal Act claims.

10  **C.**   **Plaintiff Would Not Be Sued, Regardless of How She Responded to the Letter.**

11

12  Plaintiff asserts Midland Credit's Letter should have included a disclosure

13  about potentially reviving the statute of limitations. As alleged in her FAC, she

14  theorizes that a partial payment would have revived the statute of limitations—which

15  is not the case in California, as discussed in Section IV.B, *supra*. In opposition to

16  Midland Credit's motion to dismiss, Plaintiff hypothesized that she could have

17  responded in some way that triggered Section 360. It was this second, unalleged

18  theory the Court accepted at the pleadings stage. (Sept. 13 Order, p. 5:11-18.)

19  The undisputed facts show, however, that regardless of how Shadow might

20  have responded to the Letter, and even regardless of what the law provided, Midland

21  Funding does not sue on debts after the statute of limitations has run. (McClure

22  Decl. ¶¶ 17-19.) It does not consider partial payments to create a new contract on

23  which it could sue, or as a revival of the statute of limitations on the prior contract—

24  even if state law permits revival. (*Id.* ¶¶ 18-19.) It also does not resell debts. (*Id.*

25  ¶ 24.) Additionally, it is undisputed that Plaintiff did not respond to the Letter in any

26  way, further pushing her claims into the realm of hypothetical. (*Id.* ¶¶ 15-16.)

27  It was on these facts that the District Court for the Middle District of

28  Florida—considering Florida law, which (unlike California) permits revival based

on partial payments—granted Midland Credit summary judgment on an identical theory, because "a statement that partial payment might revive or reset the statute of limitations would be a misrepresentation, given Defendants' policies." *Koerner v. Midland Credit Mgmt.*, 347 F. Supp. 3d 1143, 1146 (M.D. Fla. 2018). Even if it were not a literal misstatement, including a partial payment disclosure, combined with Midland Credit's representation "we will not sue," would likely confuse consumers for reasons articulated by the CFPB in the Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking, Outline of Proposals Under Consideration and Alternatives Considered, dated July 28, 2016 ("**CFPB Outline of Proposals**"), at 21 (RJN Ex. D), discussed *infra*. Thus, including a partial payment disclosure would be confusing; and, omitting it is immaterial in light of Midland Credit's policies. *Koerner*, 347 F. Supp. 3d at 1146. "[N]on-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

Because omitting false, confusing or immaterial information is no violation of the FDCPA or the Rosenthal Act, summary judgment is appropriate.

**D.      Plaintiff Has No Article III Standing to Raise Hypothetical Scenarios Wherein Plaintiff Might Inadvertently Trigger Section 360 and Midland Funding Might Then Sue.**

As alluded to above, any hypothetical scenarios regarding Shadow's inadvertently triggering Section 360 and then being sued assume contingent and speculative future actions by both Shadow and Midland Credit. As such, Shadow has no Article III standing to assert such a theory.

"As required by Article III, courts may adjudicate only actual cases or controversies." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011). To establish standing, "the plaintiff must have suffered an 'injury in fact' – an

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   invasion of a legally protected interest which is (a) concrete and particularized,

2   [citations]; and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' "

3   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

4        The Seventh Circuit recently held there was no standing for a plaintiff to

5   allege an FDCPA claim based on required statutory disclosures being omitted from

6   a letter, because the plaintiff did not allege a threat of real injury: She did not allege

7   that she had either responded to the letter or ever intended to. *Casillas v. Madison*

8   *Ave. Assocs.*, No. 17-3162, 2019 U.S. App. LEXIS 16797, at *12-13 (7th Cir. June

9   4, 2019). The same analysis applies here: Shadow never responded to the Letter, and

10  does not allege she ever intended to.

11       In addition, "[t]he doctrines of mootness, ripeness, and political question all

12  originate in Article III's 'case' or 'controversy' language, no less than standing

13  does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "The Supreme

14  Court instructs that ripeness is 'peculiarly a question of timing,' *Regional Rail*

15  *Reorg. Act Cases*, 419 U.S. 102, 140 (1974), designed to 'prevent the courts,

16  through avoidance of premature adjudication, from entangling themselves in

17  abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

18  1134, 1138 (9th Cir. 2000).

19       Notably, "**contingent future events that may not occur as anticipated, or**

20  **indeed may not occur at all**" are not sufficiently ripe to confer standing. *See*

21  *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580–81 (1985) (citation

22  omitted, emphasis added). Nor are "conjectural or hypothetical" scenarios sufficiently

23  "concrete and particularized" to qualify as an injury-in-fact under Article III. *Spokeo,*

24  *Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016); *Southern*

25  *Pacific Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).  *Bova*

26  *v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009), is on point. City employees

27  challenged the City's policy of discontinuing health care insurance coverage after

28  employees retired. The Ninth Circuit concluded that the case was not ripe because

1  "the alleged injury—denial of health insurance coverage—has not yet occurred."

2  The court reasoned that the alleged injury was "contingent upon two events: (1)

3  each Plaintiff's retirement from City service; and (2) the City's official denial of

4  benefits to him or her." *Id.* at 1096. Because it was "possible that neither of the two

5  events will occur," the case was not ripe for review. *Id.*

6        The injury that Shadow posits would occur—being sued after Midland

7  Funding said it would not sue—is contingent upon two future events: (1) her

8  acceptance of Midland Credit's offer in a way that could be construed under

9  California law to renew the statute of limitations; and (2) Midland Funding then

10  suing her on the debt, despite having told her it would not (and despite its own

11  written policies not to). As the record here shows, however, these events are both

12  impossible, and Shadow has not articulated, and cannot articulate, how such

13  scenarios could come to pass here given the undisputed facts. Thus, the case is not

14  ripe for review. *Thomas*, 473 U.S. at 580–81; *Bova*, 564 F.3d at 1096.

15      **E.**    <u>**Binding Orders and Applicable Law from the CFPB and the**</u>

16  <u>**California Legislature—Neither of Which Mention or Require Partial Payment Language—Dictate that Midland Credit Use the**</u>

17  <u>**Exact Disclosure Language At Issue Here.**</u>

18        The exact language of the Disclosure—"The law limits how long you can be

19  sued on a debt. Because of the age of your debt, we will not sue you for it"—***no***

20  ***more and no less***—has been widely recognized by legislatures and regulators to

21  provide consumers with an accurate status of a time-barred debt. Indeed, the exact

22  language at issue here has been required for debt buyers in California since 2014,

23  and it is now also required under the Rosenthal Act. *See* Cal. Civ. Code

24  § 1788.52(d). Other state legislatures around the country have either passed, or are

25  considering passing, this exact disclosure language.[3]

26

27  [3] Texas H.B. No. 996 recently passed the Texas Senate, and on May 28, 2019 it was

28  sent to the Governor for signature. *See* RJN Ex. G. If and when it is signed, the

1    Additionally, in 2015, Midland Credit entered into a Consent Order with the

2    CFPB which required that it use the exact language in all communications seeking

3    to collect time-barred debt. (*See* RJN & RJN Ex. A.) Since the Consent Order was

4    signed, Midland Credit has complied with its requirements, and it did so in this case

5    as well. Indeed, there is no dispute that the Consent Order requires the exact language

6    that appears on the Disclosure. Other federal regulators have entered into consent

7    orders with other companies requiring the exact language that Midland Credit

8    included.[4] Midland Credit should be able to rely on the Consent Order to defend

9    itself from Shadow's claim that using the Disclosure when colleting a time-barred

10   debt was misleading. 15 U.S.C. § 1692k(e) (creating a safe harbor for "any act done

11   or omitted in good faith in conformity with any advisory opinion of the [CFPB]");

12   *Gutierrez v. Portfolio Recovery Assocs., LLC*, 2019 U.S. Dist. LEXIS 18553, at *1

13   (C.D. Cal. Feb. 1, 2019) (noting that "the CFPB does not appear to issue advisory

14   opinions"); *id.* at *1 ("[a] publicly available consent decree has a similar – if not

15   stronger – effect as an advisory opinion regarding the conduct at issue.").

16   The Consent Order provides that Midland Credit must "clearly and

17   prominently" include the Disclosure in correspondence concerning time-barred debt.

18   (Consent Order ¶ 133(b)(ii) [RJN Ex. A].) "Clearly and prominently" is a defined

19   term: "as to written information, written in a type size and location sufficient for an

20   ordinary Consumer to read and comprehend it, and disclosed in a manner that would

21   be easily recognizable and understandable in language and syntax to an ordinary

22

23   _____

24   legislatures and governors of both California and Texas—states comprising over
     20% of the U.S. population, see https://www.census.gov/quickfacts/—will have

25   agreed that the Disclosure is an effective, sufficient, and non-misleading disclosure.
     [4] *See* FTC Consent Decree, pp. 10-14, entered in *United States v. Asset Acceptance,*

26   *LLC*, No. 8:12-cv-00182 (M.D. Fla. Jan. 31, 2012) (requiring same disclosure

27   required in the CFPB Consent Order, and not requiring partial payment disclosure)

28   (RJN Ex. B).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1  Consumer. If the information is contained in a multi-page print document, the

2  disclosure appears on the first page….” (*Id.* ¶ 6.)

3         At the motion-to-dismiss stage, the Court suggested that the Disclosure was

4  not sufficient because it was not “prominently disclosed.” (Sept. 13 Order, p. 6:18-

5  21.) As an initial matter, Plaintiff’s FAC does not challenge the location,

6  prominence, font, or color of the Disclosure. And she does not—because she

7  cannot—assert that she has the ability to challenge whether Midland Credit

8  complied with the Consent Order’s requirements. Rather, Shadow’s *sole* theory is

9  that the language of the Disclosure is insufficient, and should have included a

10  statement regarding the effect of a partial payment. Accordingly, because these

11  issues are not before the Court, they cannot be the basis for denying Midland Credit

12  summary judgment.

13         Even if Shadow did make these assertions, or if she had standing to quibble

14  with the manner in which Midland Credit complied with the Consent Order (she

15  does not; that is the responsibility of the CFPB, and the CFPB alone), the Disclosure

16  in the Letter complied with Midland Credit’s obligations under the Consent Order.

17  The Disclosure is on the first page of the Letter; it is in the same font as the majority

18  of the page; and is written in a type size and location sufficient for an ordinary

19  consumer to read and comprehend it. In short, it fully complies with the Consent

20  Order. Indeed, the Disclosure is in a similar location and font size as the disclosure

21  approved by Judge Bashant in *Synergetic*, 2018 U.S. Dist. LEXIS 198087, at *24.[5]

22

23

24  _____

    [5] The Court’s motion to dismiss order also noted that Midland Credit’s Letter

25  “included other language that detracted from the required disclosure,” but the Court did not indicate what language it was referring to. (Sept. 13 Order, p. 6:19-21.)

26  Regardless, Plaintiff does not allege that the Letter included language inconsistent with the Disclosure; she alleges that the Disclosure was incomplete, because it “fails

27  to advise that making a partial payment could revive the statute of limitations on

28  what is an otherwise time-barred debt.” (*See* FAC ¶¶ 34-36, 39-40, 48, 52.) If the

### F.   Not Requiring Partial Payment Language Makes Particular Sense in States Like California Which Do Not Allow Partial Payments to Revive Expired Statutes Of Limitations.

Neither California law, nor the Consent Order require, or in any way endorse the inclusion of the so-called "partial payment" language that Plaintiff advocates should be included. This is not a coincidence, or an instance where Plaintiff is raising an issue that no official body has ever considered. Rather, federal and state regulators and legislatures have looked at the issue, and specifically noted the pitfalls and inconsistencies that could arise if such a disclosure were required.

First, including such a disclosure could potentially be misleading and confusing to consumers generally. Notably, the CFPB itself has suggested as much:

> Consumers may revive a time-barred debt under state law if they make a payment on it or acknowledge that the debt is theirs. Consumers may believe that these actions would be beneficial to them. To try to correct this impression, collectors could attempt to disclose that these actions in fact could permit collectors to subsequently file a lawsuit because the debt has been revived. However, ***the Bureau's testing to date suggests that consumers may not fully understand such a disclosure, because it seems counterintuitive to them.***

*See* CFPB Outline of Proposals, at 21 (emphasis added) (RJN Ex. D).

Second, in states like California that do not permit a partial payment to revive an expired statute of limitation, such language could not only be confusing to consumers—it would misstate the law. The FTC's 2010 proposal of a partial payment disclosure followed this dichotomy, suggesting it would be appropriate, <u>not</u> in all states, but in "states where laws continue to provide that a partial payment on a time-barred debt revives it." Federal Trade Commission, Repairing a Broken System (July 2010) ("**2010 FTC Report**"), p. 28 (RJN Ex. C).

California is not a state that allows revival with a mere partial payment. Rather, as detailed in Sections IV.B and V.B above, California requires a full

Court has its own concerns about the Disclosure, Midland Credit requests the opportunity to brief those concerns.

1   novation in order for an expired statute of limitation to be revived. Section 360.

2   Accordingly, adding in a statement to the Disclosure indicating that a partial

3   payment could revive the expired statute of limitations would be contrary to

4   established state law. Indeed, when the California legislature was developing the

5   disclosure language for the Debt Buying Act, it was ***specifically aware*** of the 2010

6   FTC Report. *See* Senate Judiciary Committee, Report on SB 233 (Leno and Correa)

7   (May 6, 2013), at pp. 8-11 (discussing the 2010 FTC Report and noting it

8   "contained recommendations for reforms similar to those proposed by this bill")

9   (RJN Ex. E); FAC ¶ 36 (referencing the 2010 FTC Report). Accordingly, it can be

10  presumed that the California legislature was aware of the possibility of requiring a

11  partial payment disclosure, but chose not to it would be contrary to California law.[6]

12      With respect to the Debt Buying Act, it is notable that statutes are not

13  construed "in isolation, but rather [courts] read every statute 'with reference to the

14  entire scheme of law of which it is part so that the whole may be harmonized and

15  retain effectiveness.'" *People v. Pieters*, 52 Cal. 3d 894, 899 (1991). "[C]ode sections

16  *in pari materia* must be harmonized with each other to the extent possible; a section

17  should be construed in light of the whole system of law of which it is a part." *Pac.*

18  *Sw. Realty Co. v. Cty. of L.A.*, 1 Cal. 4th 155, 169 (1991).[7] The provisions of the

19  Rosenthal Act and the Debt Buying Act that require the very disclosures Shadow

20  challenges are *in pari materia* with each other, and should be construed together.

21

22

23  [6] Indeed, "statutes… are deemed to have been enacted with full recognition of well-
24  established rules of law and the settled public policy of the state." *Artukovich v.*
    *Astendorf*, 125 P.2d 16, 18 (Cal. 1942). Section 360's application was well-
25  established when the Debt Buying Act and the Rosenthal Act's statute of limitations
26  disclosure language was considered and adopted.
    [7] "Statutes *in pari materia* are those which relate to the same person or thing, or to the
27  same class of persons or things." *Isobe v. Unemployment Ins. Appeals Bd.*, 12 Cal. 3d
28  584, 590 (1974) (citation omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1    Section 360 is also *in pari materia* with the Rosenthal Act's disclosure

2 language.[8] The Legislature's reference to that statute in the same act amending the

3 Rosenthal Act, combined with its actual awareness of the 2010 FTC Report, has

4 high probative value for the fact that California deliberately decided not to include a

5 partial payment disclosure under both the Debt Buying Act and the Rosenthal Act.

6    Shadow's contention that California inadvertently left something out of this

7 statutory scheme is unconvincing. Indeed, under the rules of statutory construction

8 such an argument fails. California courts construe state statutes "so as to effect the

9 intent of the Legislature." *People v. Williams*, 16 Cal. 3d 663, 667 (1976). The court

10 begins with the plain language of the statute. *People v. Cornett*, 53 Cal. 4th 1261,

11 1265 (2012). Here, the Rosenthal Act requires the precise disclosure Midland Credit

12 made—no more and no less. Under the plain language of the Rosenthal Act,

13 including that disclosure verbatim cannot violate the Rosenthal Act. Such an

14 outcome would be absurd, and "[a]ny interpretation [of a statute] that would lead to

15 absurd consequences is to be avoided." *Allen v. Sully-Miller Contracting Co.*, 28

16 Cal. 4th 222, 227 (2002).[9]

17 _____

18 [8] In the same act amending the Rosenthal Act to require this language, the California
legislature also amended Code of Civil Procedure section 337 (California's four-

19 year statute of limitations) to prohibit filing a lawsuit if the statute of limitations has
expired. *See* Cal. Stats. 2018 ch. 247 (AB 1526) (RJN Ex. F). That amendment

20 specifically references Section 360 (with its novation requirement) as the only way
to extend that filing period. *Id.*

21

22 [9] Courts in other jurisdictions have dismissed similar cases alleging that a partial
payment disclosure should have been included in a state where revival is not

23 possible with a simple partial payment. *E.g., Kislin v. Northalnd Grp., Inc.*, No. 16-
4533, 2017 U.S. Dist. LEXIS 83197, at *7 (D.N.J. Apr. 19, 2017) (granting motion

24 to dismiss because "under New Jersey law, the statute of limitations would not have
reset merely because the Plaintiff made a partial payment. Thus, under the FDCPA,

25 the Letter [which did not provide any disclosures regarding the statute of
limitations] was not deceptive or misleading in that regard.") (appeal dismissed); *Ali*

26 *Judah v. Total Card, Inc.*, No. 16-5881, 2017 U.S. Dist. LEXIS 81738, at *9-10

27 (D.N.J. May 30, 2017) (granting motion to dismiss FDCPA lawsuit); *Genova v.*

28

1    In short, the Letter followed the requirements and guidance of many courts,

2 the California legislature, the FTC, and the CFPB. The Letter contained only true

3 statements, and Shadow's theory would have required Midland Credit to add ***untrue***

4 statements to the Letter because a partial payment would not have revived the

5 statute of limitations. Midland Credit did not violate the law providing the approved

6 disclosure, while omitting untrue statements about suing Shadow in the future.

### VI. THE FDCPA AND ROSENTHAL ACT VIOLATE THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

#### A.  The Two Statutes Engage In Viewpoint Discrimination.

10    The First Amendment provides that "Congress shall make no law… abridging

11 the freedom of speech," and the Fourteenth Amendment applies that restriction to

12 California. U.S. Const. arts. I, XIV. "With few narrow exceptions, a fundamental

13 principle of the First Amendment is that the government may not punish or suppress

14 speech based on disapproval of the ideas or perspectives the speech conveys." *Matal*

15 *v. Tam*, 137 S. Ct. 1744, 1750 (2017) ("*Matal*"). "Commercial" speech is generally

16 entitled to lower protection than core First Amendment speech; however,

17 "commercial" speech is defined as "speech that proposes a commercial transaction."

18 *Bd. of Trs. v. Fox*, 492 U.S. 469, 482 (1989); *Cent. Hudson Gas & Elec. Corp. v.*

19 *Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980). As an initial matter, a debt

20 collector's speech is not "commercial" because it does not propose a commercial

*Total Card, Inc.*, 193 F. Supp. 3d 360, 368 (D.N.J. 2016) ("Defendant was not required to 'inform the consumer that the statute of limitations will reset upon making the first monthly payment,' because, under this Court's reading of New Jersey law, that statement is incorrect . . .") (appeal dismissed); *Cohen v. Ltd. Fin. Servs. LP*, 15-7422, 2016 U.S. Dist. LEXIS 91299, at *11 (D.N.J. Jul. 14, 2016) (dismissing FDCPA lawsuit because in New Jersey, revival requires "an act of declaration which establishes the debtor's recognition of, and intention to pay, the entire claim" and thus the partial payment sought in the letter would not have revived the statute of limitations) (emphasis in original).

1  transaction; it discusses a past transaction. If a debt collector's statements qualify as
2  "commercial," a debtor's speech to the debt collector is no less "commercial."

3      But even assuming that the FDCPA and Rosenthal Act regulate "commercial"
4  speech and must be assessed under those standards, "the power to proscribe [speech]
5  on the basis of one content element (*e.g.*, obscenity) does not entail the power to
6  proscribe it on the basis of other content elements." *R. A. V. v. St. Paul*, 505 U.S.
7  377, 386 (1992). "Even when speech falls into a category of reduced constitutional
8  protection, the government may not engage in content discrimination for reasons
9  unrelated to those characteristics of the speech that place it within the category."
10 *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 576 (2001).

11     The upshot is that laws regulating commercial speech must remain viewpoint
12 neutral, and neither the FDCPA nor the Rosenthal Act pass that test. The Supreme
13 Court has not addressed this issue, *see Jerman v. Carlisle, McNellie, Rini, Kramer &*
14 *Ulrich, L.P.A.*, 559 U.S. 573, 604 n.21 (2010) (declining to address similar First
15 Amendment argument not raised below and not raised in appellate briefing); to
16 Midland Credit's knowledge, no court has addressed it.

17     "The First Amendment requires heightened scrutiny whenever the
18 government creates 'a regulation of speech because of disagreement with the
19 message it conveys.'… Commercial speech is no exception." *Sorrell v. IMS Health*
20 *Inc.*, 564 U.S. 552, 566 (2011); *Rosenberger v. Rector & Visitors of the Univ. of Va.*,
21 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate
22 speech based on its substantive content or the message it conveys."). "At its most
23 basic, the test for viewpoint discrimination is whether—within the relevant subject
24 category—the government has singled out a subset of messages for disfavor based
25 on the views expressed." *Matal*, 137 S. Ct. at 1766.

26     Neither the FDCPA nor the Rosenthal Act are viewpoint neutral. The two
27 statutes regulate the speech of debt collectors—speech attempting to collect a
28 debt—but not the speech of debtors—speech <u>not</u> seeking to collect a debt, or

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

1  seeking to challenge it. *See* 15 U.S.C. § 1692a; Cal. Civ. Code §§ 1788 *et seq*. In
2  other words, the statutes discriminate based both on speaker and on viewpoint.

3      This difference is not merely theoretical. Under 15 U.S.C. sections 1692e and
4  1692f, and California Civil Code section 1788.17, a debt collector may be punished
5  for any material misstatement, no matter how innocent. *See*, 592 F.3d at 1030. By
6  contrast, a debtor—who, no less than a debt collector, has financial incentives to
7  make innocent, optimistic, or even intentional misstatements regarding the status or
8  amount of a debt—may deny the debt collector's assertions and make his or her own
9  assertions with virtual impunity. Congress and the California legislature have
10 weighed in to press their thumb on the scales in favor of one of two parties speaking
11 on the same topic—in essence, a private contractual dispute—under the rationale
12 that in so doing, they are "leveling the playing field" between the two. *Donohue*,
13 592 F.3d at 1030 (the FDCPA "seek[s] somewhat to level the playing field between
14 debtors and debt collectors"). This is, on its face, viewpoint discrimination.

15     "Unlike content based discrimination, discrimination based on viewpoint…
16 remains of serious concern in the commercial context." *Matal*, 137 S. Ct. at 1767;
17 *Rosenberger*, 515 U.S. at 829 ("When the government targets not subject matter, but
18 particular views taken by speakers on a subject, the violation of the First
19 Amendment is all the more blatant."). "A law found to discriminate based on
20 viewpoint is an 'egregious form of content discrimination,' which is 'presumptively
21 unconstitutional.'" *Matal*, 137 S. Ct. at 1766 (quoting *Rosenberger*, at 829-830).

22     The statutes must therefore survive strict scrutiny. They can be upheld only if
23 they are narrowly tailored to "promote a compelling interest," which means they
24 must be "the least restrictive means to further the articulated interest." *Sable*
25 *Commc'ns of Cal*. v. FCC, 492 U.S. 115, 126 (1989).

26     **B.    The Two Statutes Fail Strict Scrutiny.**

27     Eliminating "abusive," "deceptive," and "unfair" speech regarding statutory
28 debt, 15 U.S.C. § 1692(e), could be a permissible governmental goal—but that is not

the FDCPA's or the Rosenthal Act's goal. Instead, the FDCPA and Rosenthal Act only concern themselves with "abusive," "deceptive" or "unfair" speech if it is the debt collector speaking. In short, the governmental goal of the FDCPA and the Rosenthal Act is to favor the speech of debtors over debt collectors. *See Donohue*, 592 F.3d at 1030. This is, categorically, not a compelling governmental interest.

Even assuming the governments' interest could be reframed so to be compelling, the FDCPA and Rosenthal Act's strict liability regimes are not the least restrictive method of achieving the statutes' ends. They do not even meet the negligence standard the Supreme Court requires for private libel. *See Gertz v. Robert Welch*, 418 U.S. 323, 350 (1974); *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1290 (9th Cir. 2014) (applying *Gertz* protections to private speakers). The statutes are also radically under-inclusive because they do not prohibit debtors from engaging in deceptive or unfair speech regarding statutory debts—an issue related to the fact that the governmental interest incorporates impermissible viewpoint discrimination.[10] In short, both statutes fail strict scrutiny, and are unconstitutional.

## VII.   CONCLUSION

For the foregoing reasons, Midland Credit respectfully requests that this Court grant this Motion in its entirety and on each of the claims asserted therein, and enter judgment as a matter of law in Midland Credit's favor on Shadow's FAC.

DATED:  June 6, 2019

SOLOMON WARD SEIDENWURM & SMITH. LLP

By:  s/ Thomas F. Landers
THOMAS F. LANDERS
LEAH S. STRICKLAND
Attorneys for Defendant MIDLAND CREDIT MANAGEMENT. INC.

---

[10] The FDCPA also exempts original creditors and governmental debt collectors from regulation, making it under-inclusive. 15 U.S.C. § 1692a(6)(C), (F); *Am. Ass'n of Political Consultants, Inc. v. FCC*, No. 18-1588, 2019 U.S. App. LEXIS 12127, at *11 (4th Cir. Apr. 24, 2019) (holding government-backed debt exception of TCPA is a content-based restriction on speech that does not survive strict scrutiny).