THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
LEAH S. STRICKLAND [SBN 265724]
lstrickland@swsslaw.com
MEI-YING M. IMANAKA [SBN 280472]
mimanaka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303
(f) 619.231.4755

Attorneys for Defendant MIDLAND
CREDIT MANAGEMENT, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY D. SHADOW, an Individual on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>            Defendant. | Case No. 3:17-CV-02277-L-DD<br><br>**DECLARATION OF JARED MCCLURE IN SUPPORT OF SUMMARY JUDGMENT**<br><br>Date:      July 8, 2019<br>Time:      10:30 a.m.<br><br>**[No Hearing Pursuant to Local Rules]**<br><br>Judge: Hon. M. James Lorenz<br>Mag. Judge:  Hon. Mitchell D. Dembin |

I, Jared McClure, declare:

1.      I am the Director of Marketing at Midland Credit Management, Inc. ("Midland Credit" or "Defendant"), the defendant in this matter. I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.  I make this declaration in support of Defendant's Motion for Summary Judgment (the "Motion"). The matters set forth in this declaration are true and correct based on my own personal knowledge or my review of business records relevant to the matters stated herein, except for those matters which I state on information and belief, and

1  as to those matters, I am informed and believe them to be true.

2  　　2.　　I have been the Director of Marketing at Midland Credit for

3  approximately seven and a half years. My team and I are responsible for all written

4  communications sent by Midland Credit to consumers, including the design and the

5  quality assurance of written communications, and ensuring that they are produced in

6  accordance to our designs.

7  　　3.　　In my role as Director of Marketing, I am familiar with Midland

8  Credit's policies and procedures, including Midland Credit's policies and

9  procedures as they relate to accounts that Midland Credit services. I am also familiar

10  with Midland Credit's record keeping systems and practices.

11  **Shadow's Chase Account**

12  　　4.　　Non-party Midland Funding, LLC ("Midland Funding") is a buyer of

13  distressed asset portfolios that contracts with its corporate affiliate and the defendant

14  in this matter, Midland Credit, to service the debts Midland Funding owns. Midland

15  Funding designates and authorizes Midland Credit to maintain possession, custody

16  and control over the documents related to the accounts owned by Midland Funding.

17  　　5.　　I personally reviewed Midland Credit's records relating to an account

18  in the name of Sky Shadow ("Shadow"). On or around October 12, 2011, Midland

19  Funding purchased a portfolio of debt from Chase Bank USA, N.A. ("Chase"), and

20  that portfolio included Shadow's account. Midland Funding remains the owner of

21  this account. A true and correct copy (with sensitive information redacted) of the

22  Bill of Sale memorializing this transfer is attached to my declaration as **Exhibit 1**.

23  The specific accounts that Chase transferred to Midland Funding were memorialized

24  in a data file that the Bill of Sale refers to as the "Final Data File."

25  　　6.　　The Final Data File transferred pursuant to the sale provided account

26  specific information for each account that was transferred. Midland Credit has the

27  capacity to take information it receives regarding each individual debtor whose

28  account is transferred and produce that exact information in a format that is easily

readable and specific to an individual account, and its practice is to do so for each account upon its acquisition of a portfolio. Midland Credit followed this procedure for the accounts it received from Chase. Shadow's account was one of the accounts transferred in the October 12, 2011 purchase. A true and correct copy of the data file printout for Shadow's account is attached as **Exhibit 2**, with redactions added to protect Shadow's privacy interests and pursuant to this Court's rules regarding electronic filings.

7.      In Exhibit 2, a number of fields are set out on the left column, and the data that populates that field for the specific account is set out on the right column. Exhibit 2 reflects that Midland Funding purchased an account in the name of Sky Shadow, account number ending 5243 (the "**Chase Account**"). Midland Funding assigned the Chase Account to Midland Credit for servicing.

8.      The fields "Last Payment Date" and "LPmt Amt" in Exhibit 2 reflect that according to Chase's records, Shadow's last payment on the Chase Account was made on January 6, 2011, in the amount of $35. The credit card statements Midland Credit received from Chase, which Midland Credit incorporated into its own records, confirm this information. A true and correct copy (except with personal information redacted) of the Chase billing statement showing Shadow's last payment on the Chase Account is attached as **Exhibit 3**. No later payments on the Chase Account, either to Chase or to Midland Credit, are reflected in Midland Credit's records.

9.      It is undisputed for purposes of this action that the statute of limitations to sue to collect on the Chase Account expired before November 30, 2016.

10.      While the statute of limitations for suing on the debt had expired, consumers can be motivated by many things when deciding to pay off a defaulted debt. Some may continue to feel a moral obligation to pay back money they've borrowed. Some may be motivated by other things, like wanting truthfully to answer on a background check that they've made a good faith effort to repay the debt. And,

1   some consumers are simply looking to clean up their credit report.

2         11.    Midland Credit sent Shadow a letter on or around November 30, 2016

3   (the "Letter"), similar to Exhibit A to Shadow's First Amended Complaint.

4   However, Exhibit A to Plaintiff's First Amended Complaint appears distorted,

5   possibly due to the copying process used. It also visibly cuts off a portion of the

6   letter at the bottom. A true and correct copy (with redactions) of the Letter is

7   attached as **Exhibit 4** to this declaration. The Letter is sized to be printed on paper

8   that is 8.5 inches wide by 15 inches long.  It sets out three potential options for

9   paying the debt.

10        12.    Approximately the top 21% of the letter reflected in Exhibit 4 consists

11  of Midland Credit's and the recipient's address information. The remainder of the

12  letter consists of the body of the message; a space for statutory disclosures required

13  in various jurisdictions; Midland Credit's contact information; and a payment

14  coupon at the bottom. Other disclosures required by various laws appear on the back

15  of the letter.

16        13.    Midland Credit included the following disclosure on the front page of

17  the Letter, in the space reserved for disclosures required by various jurisdictions:

18  "The law limits how long you can be sued on a debt. Because of the age of your

19  debt, we will not sue you for it. If you do not pay the debt, we may continue to

20  report it to the credit reporting agencies as unpaid." This disclosure is sized in the

21  same font as the majority of the letter. Other disclosures that appear on the reverse

22  of the Letter also appear in this font size.

23        14.    Midland Credit has not filed or threatened to file a lawsuit with respect

24  to the Chase Account.

25        15.    To take advantage of any of the offers in the Letter, as the Letter itself

26  states, Shadow could have simply called Midland Credit or gone online. Midland

27  Credit keeps account notes as a part of its regular business practices in order to

28  record events that occur on an account, including any interactions with the

consumer. Had Shadow responded to the Letter in any way, as a matter of Midland Credit's regular business practices a record of that response would have been added to the account notes for Shadow's Chase Account. If Shadow had called Midland Credit, as part of Midland Credit's regular course of business the person who received the phone call would have recorded the substance of the conversation in the account notes as that conversation occurred. Had Shadow logged into the website, the system itself would have added to the account notes information reflecting any action Shadow took the account, as soon as she took that action. Had she sent in any mail, that information would have also been logged into the account notes by the person receiving the letter, upon its receipt and processing.  There is no record in the account notes on Shadow's Chase Account that she made response at all to the Letter.

16.     Thus, according to Midland Credit's records, Shadow did not respond to the Letter in any way. She has never made any payments to Midland Credit on the Chase Account.

**Midland Credit's Relevant Policies**

17.     Since before Midland Credit sent the Letter through the present day, Midland Credit and Midland Funding's written policy is if the internal estimated date for the statute of limitations has passed on an account like Shadow's Chase Account, Midland Funding will not sue to collect the debt. Midland Credit and Midland Funding follow this policy. This policy has been in effect since before Midland Credit sent the Letter; it remains in effect; and it will remain in effect for the foreseeable future. A true and correct copy of the applicable Global Operations Statute of Limitations Policy, with other sensitive and irrelevant information redacted, is attached as **Exhibit 5.** It provides that "Encore does not engage in any legal collection activities on out-of-statute accounts." Midland Credit estimates the end date of the statute of limitations on the accounts Midland Credit services based on the last payment date and a number of other factors. This date is the "Estimated

1   SOL Expiration Date." The resulting date is a conservative estimate; the statute of

2   limitations may not have actually expired, based on applicable law and other factual

3   variables.

4        18.    In keeping with its conservative approach, Midland Credit's and

5   Midland Funding's written Operations Statute of Limitations Policy provided at the

6   time, and still provides, in relevant part: "If a payment is received after the

7   Estimated SOL Expiration Date, the SOL Start Date and Estimated SOL Expiration

8   Date are not reset, even if allowed by state law." See Exhibit 5, at section 3.1(3)(b).

9   Midland Credit and Midland Funding follow this policy. This policy has been in

10  effect since at least 2013, before Midland Credit sent the Letter; it remains in effect;

11  and it will remain in effect for the foreseeable future.

12       19.    Likewise, the Global Operations MCM Statute of Limitations

13  Procedures, as effective on Dec. 7, 2015, reads: "If a payment is received after the

14  expiration of the legal statute, that payment is never used in the SOL calculation,

15  even if allowed by law." In another place in that document, it again states: "If a

16  payment is received after the Estimated SOL Expiration Date, that payment is never

17  used in the SOL calculation, even if allowed by law." A true and correct copy of

18  those pages from the MCM Statute of Limitations Procedures, redacted to omit

19  irrelevant information, is attached as **Exhibit 6.** Midland Credit and Midland

20  Funding also follow this procedure. This procedure has also been in effect since

21  before Midland Credit sent the Letter; it remains in effect; and it will remain in

22  effect for the foreseeable future.

23       20.    Moreover, on September 9, 2015, the Consumer Financial Protection

24  Bureau issued a Consent Order ("Consent Order") in the matter of Encore Capital

25  Group, Inc. Midland Funding, LLC, Midland Credit Management, Inc. and Asset

26  Acceptance Capital Corp., Administrative Proceeding File No. 2015-CFPB-0022

27  (Sept. 9, 2015). A true and correct copy of the Consent Order was filed in this case

28  on January 16, 2018, and can be found at Docket # 6-3. The Consent Order applies

1  to Midland Credit and Midland Funding.

2      21.    The Consent Order provides that Encore and its affiliates, including

3  Midland Credit, must "clearly and prominently" disclose the following language in

4  correspondence concerning a time-barred debt: "The law limits how long you can be

5  sued on a debt. Because of the age of your debt, we will not sue you for it." Consent

6  Order ¶ 133(b)(ii). "Clearly and prominently" means, "as to written information,

7  written in a type size and location sufficient for an ordinary Consumer to read and

8  comprehend it, and disclosed in a matter that would be easily recognizable and

9  understandable in language and syntax to an ordinary Consumer. If the information

10  is contained in a multi-page print document, the disclosure appears on the first

11  page…." Consent Order ¶ 6.

12      22.    The disclosure in the Letter was designed to comply with this

13  requirement, by appearing on the first page of the Letter and in the same font as the

14  majority of the letter, at the top of the section reserved for first-page statutory

15  disclosures.

16      23.    Midland Credit considers all guidance in attempting to provide all

17  meaningful disclosures to consumers in compliance with applicable law. Thus, it

18  also took into account the Consent Decree entered between the FTC and Asset

19  Acceptance, LLC on January 31, 2012 (the "FTC Consent Decree"), in *United*

20  *States of America v. Asset Acceptance, LLC*, Case No. 8:12-cv-00182-JDW-EAJ

21  (M.D. Fla.). A true and correct copy of the FTC Consent Decree was also filed in

22  this matter and appears at Docket # 6-4.  In the FTC Consent Decree, the FTC

23  provided further disclosure language when a debt is beyond the statute of

24  limitations, but not past the debt for obsolescence under the Fair Credit Reporting

25  Act: "The law limits how long you can be sued on a debt. Because of the age of

26  your debt, we will not sue you for it. If you do not pay the debt, we [Asset

27  Acceptance, LLC], may [continue to] report it to the credit reporting agencies [as

28  unpaid]." FTC Consent Decree, p. 13 of 28. Midland Credit does credit report when

1    eligible, so it added this phrasing to the CFPB disclosure.

2         24.    From the time Midland Credit sent the Letter until the present day,

3    Midland Credit and Midland Funding have also had a written policy in place of not

4    selling, transferring, or conveying debts owned by Midland Funding to third parties.

5    Midland Credit and Midland Funding follow this policy as well. A true and correct

6    copy of the relevant portion of the applicable policy is attached hereto as **Exhibit 7**.

7    This procedure has also been in effect since before Midland Credit sent the Letter; it

8    remains in effect; and it will remain in effect for the foreseeable future. The CFPB

9    Consent Order likewise prohibits Encore and its affiliates (like Midland Funding)

10   from reselling debt in most instances to anyone other than the entity that initially

11   sold the debt, or to another Encore affiliate subject to the CFPB Consent Order. *See*

12   Consent Order ¶ 130.

13        I declare under penalty of perjury under the laws of the United States of

14   America that the foregoing is true and correct.

15        Executed June 5, 2019, at San Diego, California.

16

17

18   _____
     Jared McClure

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



BILL OF SALE

Closing Date: 10/12/2011

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated 09/01/2011 between Chase Bank USA, N.A. and Midland Funding, LLC("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date of 10/06/2011 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in the Final Data File, entitled (Account's Primary File Name) attached hereto and made part hereof for all purposes.



Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller on (the "Closing Date") 10/12/2011 by 2:00 p.m. Seller's time, as follows:



This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

With respect to account information for the Accounts listed in the Final Data File, Seller represents and warrants to Purchaser that (i) the Account information is complete and accurate; (ii) the Account information constitutes Seller's own business records and accurately reflects in all material respects the information in Seller's database; (iii) the Account information was kept in the regular course of business; (iv) the Account information was made at or near the time by, or from information transmitted by, a person with knowledge of the data entered into and maintained in the Seller's database; and (v) it is the regular practice of Seller's business to maintain and compile such data.

Chase Bank USA, N.A.                    Midland Funding, LLC

By: _____          By: _____
      Ericka Long                            Paul Grinberg

Date: 10/06/2011                        Date: 10/12/11

Title: Team Manager                     Title: Executive Vice President & CFO

Approved by Legal

MCM-SHADOW 000027

# EXHIBIT 2

| Field | Field Data |
|-------|-----------|
| Last Name | SHADOW |
| First Name | SKY D |
| Account Number | ███████5243 |
| Sale Amount | 1481.63 |
| Contract Date | 20061102 |
| Address 1 | ████████████ |
| City | LITTLEROCK |
| State | CA |
| Zip Code | 935433104 |
| Home Phone | █████1534 |
| SSN | *****7799 |
| Charge Off Date | 20110930 |
| Last Payment Date | 20110106 |
| LPmt Amt | 35 |
| COBal | 1481.63 |

Data printed by Midland Credit Management, Inc. from electronic records provided by CHASE BANK USA, N.A pursuant to the Bill of Sale / Assignment of Accounts dated 10/12/2011 in connection with the sale of accounts from CHASE BANK USA, N.A to Midland Funding LLC.

MCM-SHADOW 000040

# EXHIBIT 3

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 03/02/11 | $1,117.97 | $0.00 | $32.00 |

**Account number:** ██████ 5243

$ [                    ] .

**Make your check payable to:**
Chase Card Services.
Please write amount enclosed.
New address or e-mail? Print on back.

██████████ 5243000032000011179700000000000001

21196 BEX 9 03611 D
SKY D SHADOW
LITTLEROCK CA 93543-3104

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

⑆5000160281⑆ 0188010945243311⑈

# CHASE ◐

 **Manage your account online:**
www.chase.com/creditcards

**Additional contact information**
conveniently located on reverse side

## ACCOUNT SUMMARY

| Account Number: | ████ 5243 |
|---|---|
| Previous Balance | $1,046.69 |
| Payment, Credits | -$35.00 |
| Purchases | +$84.67 |
| Interest Charged | +$21.61 |
| New Balance | $1,117.97 |
| Opening/Closing Date | 01/06/11 - 02/05/11 |
| Total Credit Line | $1,100 |
| Available Credit | $0 |
| Cash Access Line | $220 |
| Available for Cash | $0 |

## PAYMENT INFORMATION

| New Balance | $1,117.97 |
|---|---|
| Payment Due Date | 03/02/11 |
| Minimum Payment Due | $32.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APR's will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.  For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 15 years | $3,024 |
| $44 | 3 years | $1,584 (Savings=$1,440) |

If you would like information about credit counseling services, call 1-866-797-2885.

**Important Message: You Are Overlimit!**
Your statement balance exceeds your credit line. You should make a payment that includes the overlimit amount to bring the balance under your credit line.

## FLEXIBLE REWARDS SUMMARY

| Previous Points Balance | 6,469 |
|---|---|
| Points Earned on Purchases This Period | 85 |
| Points Earned Through Chase Rewards Plus | 0 |
| New Total Points Balance | 6,554 |

2,005 Points to expire on statement on or after JUNE, 2014

Thank you for using the credit card that earns rewards that can be used for travel, gift cards, cash, or merchandise. Remember, you can redeem a wide selection of $50 gift cards for 5,000 points.  Simply go chase.com/rewards and use your rewards today!

Your Chase Flexible Rewards credit card earns 1 point for every $1 you spend on purchases.  Earn up to an additional 10 points while shopping online through www.chase.com/rewardsplus. Add authorized users, and sign up to have your monthly bills charged to your card, too.  Why not get rewards for all those purchases too?  It's that simple.  Simply go chase.com/rewards to choose your reward today!  Redeem your points anytime, or just check out new offers at www.chase.com/rewards.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| | **PAYMENTS AND OTHER CREDITS** | |
| 01/06 | Payment - Thank You | -35.00 |
| | **PURCHASES** | |
| 01/20 | METLIFE AUTO&HOME PREM 800-422-4272 NY | 48.60 |
| 01/24 | WAL-MART #2950 PALMDALE CA | 3.98 |
| 01/27 | WAL-MART #2950 PALMDALE CA | 32.09 |
| | **INTEREST CHARGED** | |
| 02/04 | PURCHASE INTEREST CHARGE | 21.61 |
| | TOTAL INTEREST FOR THIS PERIOD | $21.61 |

X 0050

Exhibit 3, Page 14

MCM-SHADOW 000077

**Address Change Request**

Please provide information below only if the address information on front is incorrect.

Street Address: _____

City: _____

State: _____     Zip: _____ _____

Home Phone: ____ ____ ____     Work Phone: ____ ____ _____

E-mail Address: _____

To service and manage any of our Account(s), we, our representatives, JPMorgan Chase representatives, and/or affiliates, may contact you at any telephone number you provide to us. Please refer to your Cardmember Agreement for additional details about the use of your personal information and/or visit our website shown below to provide us with additional contact information.

---

## To contact us regarding your account:

 **By Telephone:**
In U.S.        1-800-945-2000
Español      1-888-446-3308
TDD          1-800-955-8060
Pay by phone 1-800-436-7958
Outside U.S. call collect
              1-302-594-8200

 **Send Inquiries to:**
P.O. Box 15298
Wilmington, DE 19850-5298

 **Mail Payments to:**
P.O. Box 94014
Palatine, IL 60094-4014

 **Visit Our Website:**
www.chase.com/creditcards



---



**Information About Your Account**

**Crediting of Payments:** You may make payments by any of the options listed below. The amount of your payment should be at least your minimum payment due, payable in U.S. dollars and drawn or payable through a U.S. financial institution or the U.S. branch of a foreign financial institution.

You may make payments by regular U.S. mail. Send your payment to the Payments address shown on this statement. Your payments by mail must comply with the instructions on this statement. Do not send cash. Write your Account number on your check or money order. Payments must be accompanied by the payment coupon in the envelope provided with our address visible through the envelope window; the envelope cannot contain more than one payment or coupon; and there can be no staples, paper clips, tape or correspondence included with your payment. If your payment is in accordance with our payment instructions and is made available to us on any day by 5:00 p.m. local time of our Payments address on this statement, we will credit the payment to your Account as of that day. If your payment is in accordance with our payment instructions, but is made available to us after 5:00 p.m. local time at the Payments address on this statement, we will credit it to your Account as of the next calendar day.

You may make payments electronically through our website shown on this statement. If we receive your completed request on our website by 5 p.m. Eastern Time, we will credit your payment as of that day. If you receive your request after 5 p.m. Eastern Time, we will credit your payment as of the next calendar day. If you specify a future date in your request we will credit your payment as of that day.

For all other payments or for any payment type above for which you do not follow our payment instructions, crediting of your payments may be delayed for up to 5 days.

**Account Information Reported to Credit Bureaus:** We may report information about your Account to credit bureaus. Late payments, missed payments or other defaults on your Account may be reflected in your credit report. If you think we have reported inaccurate information to a credit bureau, you may write to us at the inquiries address shown on this statement.

**To Service and Manage Any of Your Account(s):** We, our representatives, JPMorgan Chase representatives, and/or affiliates, may contact you at any telephone number you provide to us. Please refer to your Cardmember Agreement for additional details about the use of your personal information.

**Notice About Electronic Check Conversion:** When you pay by check, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution. Call the Customer Service number on this statement if you have questions about electronic check collection or do not want your payments collected electronically.

**Conditional Payments:** Any payment check or other form of payment that you send us for less than the full balance that is marked "paid in full" or contains a similar notation, or that you otherwise tender in full satisfaction of a disputed amount, must be sent to Card Services, P.O. Box 15049, Wilmington, DE 19850-5049. We reserve all our rights regarding these payments (e.g., if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and you will still owe any remaining balance). We may refuse to accept any such payment by returning it to you, not cashing it or destroying it. All other payments that you make should be sent to the regular Payment address shown on this statement.

**Annual Renewal Notice:** If your Account Agreement has an annual membership fee and/or similar charge for issuance or availability of your account, it will be billed each year or in monthly or quarterly installments. This fee and/or charge are owed whether or not you use your Account, and you agree to pay them when billed. The annual fee and charge are non-refundable unless you notify us that you wish to close your account within 30 days or one billing cycle (whichever is less) after we provide the statement on which the annual fee or charge is billed and at the same time, you pay your outstanding balance in full. If you do this, for a charge billed more often than annually such as a monthly service charge, you will not owe the last billed charge; however, prior billed charges are non-refundable and must be paid as part of paying your outstanding balance in full. Your payment of the annual fee or charge does not affect our rights to close your Account and to limit your right to make transactions on your Account. If your Account is closed by you or us, we will continue to impose the annual fee and/or charge until you pay your outstanding balance in full and terminate your Account relationship.

**Calculation of Balance Subject to Interest Rate:** To figure your periodic interest charges for each billing cycle when a daily periodic rate(s) applies, we use the daily balance method (including current transactions). To figure your periodic interest charges for each billing cycle when a monthly periodic rate(s) applies, we use the average daily balance method (including current transactions). For an explanation of either method, or questions about a particular charge calculation on your statement, please call us at the toll free customer service phone number listed above.

We calculate periodic interest charges, using the applicable periodic rates shown on this statement, separately for each feature (e.g., balance transfer checks and cash advance checks ("check transaction"), purchases, balance transfers, cash

advances, promotional balances or overdraft advances). These calculations may combine different categories with the same periodic rates. Variable rates will vary with the market based on the Prime Rate (or such index described in your Account Agreement). There is a minimum interest charge of $1.50 (or such amount described in your Account Agreement) in any billing cycle in which you owe any periodic interest charges, and a transaction fee for each balance transfer, cash advance, or check transaction, in the amounts stated in your Account Agreement, as it may be amended. There is a foreign transaction fee of 3% of the U.S. dollar amount of any foreign transaction (or such amount described in your Account Agreement).

**How to Avoid Paying Interest on Purchases:** We begin assessing periodic interest charges on a transaction, fee, or interest charge from the date it is added to your daily balance until your Account is paid in full, as described in your Account Agreement. Your due date will be a minimum of 21 days following the close of each billing cycle. You can avoid periodic interest charges on new purchases when they are first billed to a statement as described below, but this does not apply to balance transfers, cash advances or overdraft advances. If you receive a current monthly statement that includes new purchases and make a payment that we receive by the date and time the Minimum Payment is due for that statement, we will not charge periodic interest on any portion of those new purchases that we allocate such payment to, so long as 1) your current statement also shows that we received payment of the ending balance for your previous month's statement by the date and time the Minimum Payment was due OR 2) that the ending balance for your previous month's statement was due OR 3) that the ending balance for your previous month's statement was zero. If you have a balance other than a purchase balance and that balance carries a higher periodic interest rate, you may not be able to avoid periodic interest charges on new purchases if you do not pay your balance in full each month, because we generally allocate payments first to the balance with the highest periodic interest rate.

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us on a separate sheet at Customer Service, P.O. Box 15299 Wilmington, DE 19850-5299. You may also contact us on the web at chase.com.

In your letter, give us the following information:

• Account information: Your name and Account number.

• Dollar amount: The dollar amount of the suspected error.

• Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors in writing or on the web at chase.com. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

• We cannot try to collect the amount in question, or report you as delinquent on that amount.

• The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.

• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.

• We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card Account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at Customer Service, P.O. Box 15299 Wilmington, DE 19850-5299 or on the web at chase.com.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay we may report you as delinquent.

MA11182010

Statement Date:   01/06/11 - 02/05/11
Account Number:  ████████ 5243
Page 2 of 2

| 2011 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2011 | $0.00 |
| Total interest charged in 2011 | $42.94 |

Year-to-date totals reflect all charges minus any refunds
applied to your account.

**INTEREST CHARGES**

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) 31 Days In Cycle | Balance Subject To Interest Rate | Interest Charges | Accrued Interest Charges |
|---|---|---|---|---|
| Purchases | 23.99% | $1,060.57 | $21.61 | $0.00 |
| Cash Advances | 23.99% | $0.00 | $0.00 | $0.00 |
| Balance Transfer | 23.99% | $0.00 | $0.00 | $0.00 |

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information, as applicable.

Exhibit 3, Page 16                    MCM-SHADOW 000079



MCM-SHADOW 000080

# EXHIBIT 4

**mcm** Midland Credit Management, Inc.
2365 Northside Drive
Suite 300
San Diego, CA 92108

11-30-2016

Sky D Shadow
P99T3699 001 

Littlerock, CA  93543-3104

# Did y u forg t somethi g?

| MCM Account Number | Current Balance | Discount |
|---|---|---|
| 7466 | $1,878.90 | 40% OFF |

| Original Creditor | Chase Bank USA, N.A. | Current Owner | Midland Funding LLC |
|---|---|---|---|
| Original Account | 5243 | | |

## CALL US TODAY! (800) 321-3809

**Hours of Operation**

Sun-Th: 5am-9pm PT; Fri-Sat: 5am-4:30pm PT;

### We can't change the past, but we can help with your future.

RE: Chase Bank USA, N.A.

Sky D Shadow, mistakes can happen to anyone. Midland Credit Management believes that everyone deserves a second chance. Call (800) 321-3809 or visit us online at www.midlandcreditonline.com by 12-30-2016 to accept one of these discounts.

**We are offering you 40% OFF your balance to help you eliminate your debt while saving money.**

Midland Credit Management will help you put this debt burden behind you. Call us today to pay off your account, and regain your financial freedom!

Sincerely,

*Tim Bolin*

Tim Bolin, Division Manager

The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid.

## KNOW YOUR OPTIONS

### Option 1
**40% OFF**
Payment Due Date: 12-30-2016

### Option 2
**20% OFF**
Over 6 Months

### Option 3
**Monthly Payments As Low As:**
**$50 per month**

We are not obligated to renew any offers provided.

 **(800) 321-3809**      **midlandcreditonline.com**     
Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060 0578

**PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION**

---

| MCM Account Number | 7466 |
|---|---|
| Current Balance | $1,878.90 |

Total Enclosed    $ _____ . ___

Mail Payments to:
Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578

 **Manage Your Account Online**
midlandcreditonline.com

### Important Payment Information

**Make checks payable to:**
Midland Credit Management
Enter your MCM Account # on all payments

**(800) 321-3809**

se habla espanol
(888) 422-5178

12 8542667466 0 0112734 123016 0 433525193

B469  M003

MCM-SHADOW 000175

## Important Disclosure Information:

> **Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.**

| To report any inaccuracies or to dispute this debt, please call (800) 321-3809 Calls to and/or from this company may be monitored or recorded. | | | |
|---|---|---|---|
| **Basic Information** | | | |
| Original Creditor | Chase Bank USA, N.A. | MCM Account Number | ▆7466 |
| Original Account Number | ▆5243 | Charge-Off Date | 09-30-2011 |
| Current Creditor *The sole owner of this debt* | Midland Funding LLC | Current Servicer | Midland Credit Management, Inc. |
| **Important Contact Information** | | | |
| <u>Send Payments to:</u> Midland Credit Management, Inc. P.O. Box 60578 Los Angeles, CA 90060-0578 | <u>For disputes call (800) 321-3809 or write to:</u> Attn: Consumer Support Services 2365 Northside Drive Suite 300 San Diego, CA 92108 | <u>Physical Payments for Colorado Residents:</u> 80 Garden Center Suite 3 Broomfield, CO 80020 Phone (303) 920-4763 | |

**We are required under state law to notify consumers of the following rights. This list does not contain a complete list of the rights consumers have under state and federal law:**

You are hereby notified that a negative report on your credit record may be submitted to a credit reporting agency if you fail to meet the terms of your credit obligations.

**IF YOU LIVE IN MASSACHUSETTS, THIS APPLIES TO YOU: NOTICE OF IMPORTANT RIGHTS:** You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to MCM.

**IF YOU LIVE IN MINNESOTA, THIS APPLIES TO YOU:** This collection agency is licensed by the Minnesota Department of Commerce.

**IF YOU LIVE IN NEW YORK CITY, THIS APPLIES TO YOU:** New York City Department of Consumer Affairs License Number 1140603, 1207829, 1207820, 1227728, 2022587, 2023151, 2023152, 2027429, 2027430, 2027431

**IF YOU LIVE IN NORTH CAROLINA, THIS APPLIES TO YOU:** North Carolina Department of Insurance Permit #101659, #4182, #4250, and #3777, #111895, and #112039. Midland Credit Management, Inc. 2365 Northside Drive, Suite 300, San Diego, CA 92108

**IF YOU LIVE IN TENNESSEE, THIS APPLIES TO YOU:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

PRODA
MCM-SHADOW 000176

# EXHIBIT 5



**Global Operations**

# Global Operations Statute of Limitations Policy

Effective Date:
May 10, 2016

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
DEF 046

## 1   PURPOSE

This policy defines the principles regarding calculation and application of the estimated Statute of Limitations (SOL) expiration date for accounts being serviced by wholly owned operating subsidiaries of Encore Capital Group, Inc. that purchase or service charged-off United States' consumer receivables (Encore Subsidiaries).

## 2   SCOPE

- The policy covers all practices related to the application of the Estimated SOL Expiration date within the Encore Subsidiaries' internal collections processes and the placement of accounts into the Legal Collections Channel Process.
- This policy covers the practices of wholly owned operating subsidiaries of Encore Capital Group, Inc. that purchase or service charged-off United States' consumer receivables (Encore Subsidiaries).

## 3   POLICY

### 3.1  SOL Calculation

1) Application of SOL
   a. Encore Subsidiaries apply an SOL algorithm to all accounts it owns and services to create an SOL Start Date and an Estimated SOL Expiration Date.



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
DEF 048

CONFIDENTIAL

Exhibit 5, Page 23

MCM-SHADOW 001133

3) Renewal and Revival of SOL



b. If a payment is received after the Estimated SOL Expiration Date, the SOL Start Date and Estimated SOL Expiration Date are not reset, even if allowed by state law.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
DEF 049

CONFIDENTIAL              Exhibit 5, Page 24              MCM-SHADOW 001134



## 3.3  Forwarding Accounts for Legal Collections

1) Encore does not engage in any legal collection activities on out-of-statute
   accounts.

4) The Encore Subsidiaries' Estimated SOL Expiration Date is designed to be a
   conservative estimate of each account's statute of limitations

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
DEF 050

CONFIDENTIAL                    Exhibit 5, Page 25                    MCM-SHADOW 001135

# EXHIBIT 6





**Global Operations**

# MCM Statute of Limitations Procedures

Effective Date:
December 7, 2015

MCM Statute of Limitations Procedures

## 1   PURPOSE

This document outlines the procedures for estimating and utilizing the statute of limitations (SOL) expiration date (Estimated SOL Expiration Date) on all accounts being serviced by Midland Credit Management, Inc. (MCM).



## 3   PROCEDURES

### 3.1  MCM SOL Calculation Methodology

Internal Use Only                                                          Page 3 of 17

MCM Statute of Limitations Procedures



- When a payment is processed for an account.

  - o Payment will only update the Estimated SOL Expiration Date if the account is within the limitations period when the payment is received and the state allows for the extension of the SOL on receipt of a payment.

  - o If a payment is received after the Estimated SOL Expiration Date, that payment is never used in the SOL calculation, even if allowed by law.

The SOL calculation begins by determining the Start Date.



- If there is no judgment on the account the SOL Start Date calculation may be further informed by the Last Payment Dates (LPD) on the account.



  - o If a payment is received after the expiration of the legal statute, that payment is never used in the SOL calculation, even if allowed by law.

CONFIDENTIAL                           MCM-SHADOW 001145

# EXHIBIT 7



**Business Development** | # Debt Resale Policy

Effective Date
November 6, 2018

## 1   PURPOSE

This policy covers the company's Debt Resale practices to ensure compliance with regulatory requirements, industry best practices, and alignment to Encore's Consumer Bill of Rights (CBOR).

## 2   SCOPE

<u>In Scope</u>

This policy applies to Encore Capital Group, Inc. and its affiliates, subsidiaries, parents, divisions, or branches, and all of their successors and assigns (collectively, Encore) that are directly or indirectly engaged in the purchase, transfer, or collection of U.S. Consumer receivables.

## 3   POLICY

### 3.1   Policy Objective

Encore's policy is to treat consumers with respect and integrity, consistent with the principles articulated in the CBOR, and in compliance with consumer protection laws and regulations. Encore has made public commitments regarding the fair treatment of its consumers, and in line with those codified principals, it is Encore's business practice to not resell Debt.



### 3.4   Exceptions

Listed below are approved exceptions to this policy:

- The resale of accounts back to the entity that initially sold the Debt to Encore or to the Creditor,

- To a subsidiary or affiliate of Encore that is subject to the terms of the 2015 CFPB Consent Order,

CONFIDENTIAL                           Exhibit 7, Page 32                    MCM-SHADOW 001034

- To any entity that is subject to the terms of the 2015 CFPB Consent Order as part of an acquisition or merger with Encore, or purchase of all or substantially all of Encore's assets, or,

- Encore's (or its affiliates) creditors or any agent of such creditors (in each case, solely in its capacity as such) in settlement or satisfaction of any claims under, or in connection with the default or remedial provisions of, any relevant loan or lending agreement.

