Todd M. Friedman (SBN 216752)
Meghan E. George (SBN 274525)
Adrian R. Bacon (SBN 280332)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
mgeorge@toddflaw.com
abacon@toddflaw .com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY D. SHADOW, an Individual on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br>     vs. <br><br> MIDLAND CREDIT MANAGEMENT, INC., <br><br> Defendant. | Case No. 3:17-cv-02277-L-BLM <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |

# **TABLE OF CONTENTS**

**I. Introduction** ...................................................................1

**II. Statement of Facts** ...........................................................2

   **A. Language of the Letter** .................................................3

   **B. Execution of the Payment Plans** ..................................3

   **C. Defendant's Policies Regarding Time-Barred Debts** .........4

**III. Legal Standard** ..............................................................4

**IV. The Court's Ruling On The Motion To Dismiss** ..............6

**V. Legal Argument** ..............................................................7

   **A. Plaintiff Has Sufficiently Alleged That Defendant Has Violated Multiple Provisions of The FDCPA** .........................................7

     **1. Defendant Has Failed to Meet Its Burden As To The Novation Issue** ......9

     **2. Defendant's Voluntary Policies and Practices Do Not Inoculate It From Liability Nor Prevent A Legal Harm To Debtors** .................................11

   **B. Plaintiff's Derivative Rosenthal Claims Survive** .........13

   **C. Plaintiff Has Standing** ..............................................14

   **D. The FDCPA and RFDCPA Are Constitutional** ..........15

**VI. Conclusion** ...................................................................17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Paul*, 11 Cal. 4th 583, 904 P.2d 1205 (1995)...........................................12

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)....................................4, 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)..........................................................................................................5

*Bautz v. ARS Nat'l Servs., Inc.*, No. 16-768, 2016 WL 7422301 (E.D.N.Y. Dec. 23, 2016)..........................................................................................................14

*Baye v. Midland Credit Mgmt., Inc.*, No. CV 17-4789, 2017 WL 4918998 (E.D. La. Oct. 31, 2017).......................................................................................9

*Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336 (S.D. Fla. 2008).............................................................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986)...5

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)..................................................................................................... 15, 16

*Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990 (11th Cir. 2016).................14

*DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254 (11th Cir. 2007).............17

*Daugherty v. Convergent Outsourcing*, Inc., 836 F.3d 507 (5th Cir. 2016) ...........9

*Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749 (1985) ...........................16

*Foristiere v. Alonge*, 98 Cal. App. 563 (Cal. Ct. App. 1929)................................10

*Fortune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) ...............4

*Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011) ...............7, 8

*Hayes v. O'Marr*, 81 Cal. App. 210 (Cal. Ct. App. 1927) ....................................10

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ..............................5

*McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) ..................9, 11

*Minton v. Cavaney*, 56 Cal. 2d 576, 364 P.2d 473 (1961)......................................12

*Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099 (9th Cir. 2000) ............................................................................................................. 5, 7, 10

ii

*Pac. States Corp. v. Hall, 166 F.2d* 668 (9th Cir. 1948) .........................................10

*Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2018 WL 723278 (N.D. Ill. Feb. 5, 2018)....................................................................................... 12, 13

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) ......................................................17

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) ...........................5

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .........................................14

*Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061 (9th Cir. 2003) .................................5

*Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.*, 322 F.3d 1039, (9th Cir. 2002) ..........................................................................................5

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) .......................................................8

*Verdun v. Fid. Creditor Serv.*, No. 14-CV-0036-DHB, 2017 WL 1047109 (S.D. Cal. Mar. 20, 2017).........................................................................................14

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976) ...................................................................................................15

*Wade v. Regl. Credit Ass'n*, 87 F.3d 1098 (9th Cir. 1996) ......................................7

*White v. First Step Grp. LLC*, No. 216CV02439KJMGGH, 2017 WL 4181121 (E.D. Cal. Sept. 20, 2017) ...........................................................................13

*Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656 (2015) .........................................17

**Statutes**

Cal. C. Civ. Proc § 360 ................................................................... 1, 10, 12

Cal. C. Civ. Proc. § 337 ..........................................................................12

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et. seq. ...................... passim

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. C. §§ 1788 et. seq.7, 13, 15

**Rules**

Fed. R. Civ. P. 56(c)...............................................................................4

### Memorandum of Points and Authorities

## I.   Introduction

Much like its efforts to collect on expired debts, Defendant Midland Credit Management, Inc. ("Defendant") seeks a second bite at the apple after losing on its Motion to Dismiss, raising mostly the same arguments that were already denied by this Honorable Court.  In its Motion to Dismiss [Dkt. 6], Defendant Midland Credit Management, Inc. ("Defendant") argued that its letter to Plaintiff Shadow Sky ("Plaintiff") would not create a novation under Cal. C. Civ. Proc § 360 so as to revive the statute of limitations, that its disclosures were adequate so as not to be misleading regarding the risk of retriggering the statute of limitations, and that its disclosures were adequate pursuant to its negotiated consent decree with the Consumer Financial Protection Bureau ("CFPB").[1]  In its Motion for Summary Judgment, Defendant again argues that its letter to Plaintiff would not create a novation under Cal. C. Civ. Proc. § 360 so as to revive the statute of limitations, that its disclosures were adequate so as not to be misleading regarding the risk of retriggering the statute of limitations, and that its disclosures were adequate pursuant to its negotiated consent decree with the CFPB.

The Court has already ruled on Defendant's first three arguments.  Defendant presents no new evidence to support its position that a "novation" would not be created and thus fails to meet its burden.[2]  The Court also already considered the language of the letter at issue, such that Defendant's attempts to re-hash that already

---

[1] Defendant begins its brief by calling Plaintiff's claims "meritless," but the only thing meritless here is Defendant's attempts to re-argue the same legal issues it already lost on its Motion to Dismiss.

[2] The evidence also shows that Defendant memorializes the agreements reached regarding payment plans by written letter.

considered letter language on a Motion for Summary Judgment are unpersuasive. The Court has no reason to change its previous ruling on these issues.

Defendant also argues, for the first time, that Plaintiff does not have standing, that its voluntary corporate policy never to sue on time-barred debts prevents injury, and that the debt collection laws are unconstitutional because they restrict Defendant's speech.  Turning to Defendant's "new" arguments, Plaintiff has standing because she received a deceptive and illegal letter from Defendant, Defendant's voluntary corporate policy has no impact on the actual legal status of the debt if Plaintiff were to enter into a payment plan on it, and the debt collection laws promulgated by Congress to protect the least sophisticated debtors from abusive practices are clearly constitutional.  For these reasons and others explained more fully below, this Court should deny Defendant's Motion for Summary Judgment in its entirely.

## II.  **Statement of Facts**

The Parties are in agreement on most facts involved in this dispute, such that Plaintiff only highlights what she views as "material" facts on this motion and introduces a few additional ones not presented by Defendant.

Defendant is servicing a Chase Bank USA, N.A. account acquired by Midland Funding LLC on which the statute of limitations to sue to collect expired before November 30, 2016.  Declaration of Jared McClure ("McClure Decl."), Dkt. 22-2 at ¶¶ 4-6 & 9.  On or around November 30, 2016, Defendant sent Plaintiff a letter seeking to collect on the out-of-statute debt.  *Id.* at ¶ 11 & Ex. 4.[3]

*//*

---

[3] Defendant seems to assert that Plaintiff's version of the letter was somehow materially "distorted," but there's no fundamental difference between the letters regarding the issues being argued, and Defendant does not argue that the payment slip nor language on the back somehow cures its illegal language.

A. <u>Language of the Letter</u>

The Collection Letter stated that "mistakes can happen to anyone" and offered three settlement payment options in the middle of the page under "KNOW YOUR OPTIONS." McClure Decl. at Ex. 4 ("the Letter"). Option one (1) was for a payment due by December 30, 2016 for 40% off. *Id.* Option two (2) was for 20% off with payments over 6 months. *Id.* Option three (3) was for "monthly payments as low as $50 per month." *Id.* Therefore, Options 2 and 3 offered payments over time. *Id.*

In the last line of the Collection Letter, in much smaller and non-bold print, after offering Plaintiff the three payment options for the alleged debt, Defendant states: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid." *Id.* The bold font is used to catch debtors' attention. Declaration of Todd M. Friedman, Ex. A, Excerpts of the Deposition of Jared McClure ("McClure Depo.") at 62:3-22.

Letters, such as the Letter, are considered "marketing letters" by Defendant and are used to resolve the account for a reduced balance or to establish a payment plan. *Id.* at 48:11-19. A marketing letter is a specific offer or discount. *Id.* at 53:15-19. The second and third options are both payment plans, with the third being a flexible payment option where the debtor can create their own plan. *Id.* at 61:11-21.

B. <u>Execution of the Payment Plans</u>

A debtor can either enter into an agreement for the payment plans by phone or by Defendant's website. A debtor can log onto Defendant's website, where they will accept certain terms and conditions and can review and agree to payment plan

options.  *Id.* at 69:9-21.[4]  In the alternative, a debtor can call Defendant who will discuss repayment terms and reach an agreement regarding the first due date, how payments will be made, and a schedule of payment.  *Id.* at 68:22-69:5, 71:14-24. The call would be recorded and Defendant would send a letter to the debtor with the terms of the agreement reached regarding repayment.  *Id.* at 70:10-12, 72:2-9. Defendant uses this process to memorialize the agreements made by debtors for payment plans.  *Id.* at 72:17-20, 73:16-19.

C. Defendant's Policies Regarding Time-Barred Debts

Defendant's goal with its debts is to realize the value of the asset, which can vary from asset to asset depending on characteristics such as whether it is older or out of the statute of limitations.  *Id.* at 132:3-25.  Debtors with time-barred debts are in a better position because they cannot be sued on the debts versus a debtor with a non-time-barred debt.  *Id.* at 135:13-136:2.  Defendant also uses credit reporting in order to collect on time-barred debts because individuals will respond to clean up their credits.  *Id.* at 68:7-16.  Defendant chooses not to change the status of the debts that it records as time-barred even if the legal status has actually changed as a result of payment or agreement.  *Id.* at 76:8-77:18.  Defendant will sell debts back to the original creditor.  *Id.* at 96:4-7.  Defendant could change its policies regarding the sale and collection of time-barred debts in the future.  *Id.* at 97:9-22.

**III.   Legal Standard**

Summary Judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to Judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fortune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary Judgment bears the burden of

---

[4] This option was not fully explained by Defendant's 30(b)(6) representative nor is it disclaimed as creating an obligation in Defendant's Motion.

demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986); *Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn.*, 322 F.3d 1039, 1046 (9th Cir. 2002). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Anderson,* 477 U.S. at 255; *Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).

"[A] moving party without the ultimate burden of persuasion at trial . . . may carry its initial burden of production by either of two methods." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan*, 210 F.3d at 1106; *see Celotex Corp.*, 477 U.S. at 320, 325, 328. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion

**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**5**

at trial." *Nissan*, 210 F.3d at 1102–1103; *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

## IV.    The Court's Ruling On The Motion To Dismiss

The Court has already ruled on three of the main issues brought forth in Defendant's Motion for Summary Judgment—and its previous decision on those issues should stand because the evidence presented does not change the conclusion. In its Order denying Defendant's Motion to Dismiss [Dkt. 12] ("Order on MTD"), the Court considered the specific language of the letter and ruled that letter was deceptive and falsely represented the legal status of the debt, noting:

> "Without a "bizarre, idiosyncratic, or peculiar misinterpretations," the Letter at first blush creates the impression that the debt can be collected. To the extent a "least sophisticated consumer" notices the time-barred debt disclosure in small print at the bottom, when read in the context of the Letter as a whole, the disclaimer creates the impression that partial payments can be made free from the risk of a collection action if the debt is not paid in full. MCM's contentions that the Letter is not a deceptive means of attempting to collect a debt and does not falsely represent the legal status of the debt are rejected. See 15 U.S.C. §§ 1692e(2)(A) & (10), 1692f."

Order on MTD at 4:17-25.  The Court also noted that with respect to the inoculating language "the language was not prominently disclosed as required by the Consent Decree.  Furthermore, MCM included other language that detracted from the required disclosure. MCM's argument that inclusion of the required language immunizes it from liability is therefore rejected." *Id.* at 6:18-21.  With regards to the "novation issue," the Court had previously noted "[i]t is not clear from the Letter, as drafted by Defendant, if a written acknowledgment would be required for the debtor to take advantage of the "discounts."  Defendant has not produced evidence demonstrating it does not and thus has failed to meet its burden under

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

**V. Legal Argument**

A. <u>Plaintiff Has Sufficiently Alleged That Defendant Has Violated Multiple Provisions of The FDCPA</u>

Plaintiff alleges on behalf of herself and a Class of similarly situated individuals that Defendant's conduct in failing to disclose to Plaintiff that entering into a payment plan, i.e., by doing exactly what Defendant was asking Plaintiff to do, could revive the statute of limitations on the alleged debt thereby violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et. seq. ("FDCPA") and Rosenthal Fair Debt Collection Practices Act, Cal. Civ. C. §§ 1788 et. seq. ("RFDCPA") in multiple ways, including:

    a) Using unfair or unconscionable means in an attempt to collect a debt (15 U.S.C. § 1692f);

    b) Using misleading and deceptive practices in an attempt to collect a debt (15 U.S.C. § 1692e);

    c) Falsely representing the character, amount, or legal status of the debt (15 U.S.C. § 1692e(2)(A));

    d) Using false representations or deceptive means, in connection with the collection of any debt (15 U.S.C. §1692e(10)).

First Amended Complaint ("FAC"), Dkt. 4 at ¶¶ 38-63.  Additionally, Defendant's use of the "we will not sue you" language is deceptive because it misrepresents that legal status of the debt, namely that Defendant <u>could not</u> sue Plaintiff and that its choice not to sue was illusory.  *Id.* at ¶ 41.

In analyzing a claim under the FDCPA, "the Court applies the least sophisticated consumer standard [which] [] is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011); *see also Wade v. Regl. Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (applying the least sophisticated consumer standard to §§ 1692e and 1692f).  "The standard is designed to protect consumers of below average sophistication or intelligence, or

those who are uninformed or naive, particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d. at 1062 (internal quotation marks omitted).

There are four elements to a FDCPA cause of action: (1) the plaintiff is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o. *See Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004). Defendant does not challenge any of the first three (3) elements and instead only challenges that it violated provisions of the FDCPA.

Plaintiff asserts that Defendant violated four (4) provisions of the FDCPA[5] by sending the Letter that was deceptive and which mislead Plaintiff regarding the legal status or character of the debt by failing to disclose the risk of the revival of the statute of limitations through the payment plans and creating confusion regarding whether Defendant could rather than would sue on the underlying debt.

There are fundamentally two problems with Defendant's Letter with respect to the least sophisticated debtor. First, the letter does not disclose the risk that entering into a payment plan with Defendant would result in the debtor restarting their statute of limitations (as further argued below) and thus render the statement "[t]he law limits how long you can be sued on a debt" illusory. By offering and encouraging debtors to enter payment plans without disclosing that

Second, Defendant's language is ambiguous as to whether it **could** sue on the debt[6] and was just opting not to do so through the phrase "we will not sue you for it" rather than the more accurate 'we cannot sue you for it.' *Id.* "The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading

---

[5] And derivatively the same claims under the RFDCPA.
[6] Which for Ms. Shadow, it is undisputed that it could not.

representation, including those about the character or legal status of any debt. If a debt collector stated that it could sue on a timebarred debt but was promising to forbear, that statement would be a false representation about the legal status of that debt." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014); *accord Daugherty v. Convergent Outsourcing*, Inc., 836 F.3d 507, 511 (5th Cir. 2016). In considering the disclosure in the context of the rest of the Letter, the two sentence "notice" does not "unequivocally notice the least sophisticated consumer that judicial enforcement of the debt is not possible." *Baye v. Midland Credit Mgmt., Inc.*, No. CV 17-4789, 2017 WL 4918998, at *13 (E.D. La. Oct. 31, 2017) (analyzing the same language in the context of *McMahon* and *Daugherty*).[7] The fact that the disclosure is in the smallest non-bold text at the bottom of the letter further contributes to this confusion. As a result, Defendant's Letter violates 15 U.S.C. §§ 1692e, e(2)(A), e(10), & f. Defendant's Motion for Summary Judgment should be denied.

### 1. Defendant Has Failed to Meet Its Burden As To The Novation Issue

In its Motion to Dismiss, Defendant argued that it was impossible for a debtor to revive the statute of limitations on his or her out of statute debts by accepting one of the payment plans offered in the Letter. The Court rejected this argument, stating that under the factual standards for a motion to dismiss, it was possible, but that discovery would provide Defendant the chance to prove its position. Discovery, however, has not produced the evidence that Defendant needs to prove its position. Defendant has the initial burden to prove its position on the Motion for Summary Judgment. Defendant has failed to present evidence that its

---

[7] The *Baye* Court also found it especially concerning since the payment plans could "potentially" revive the time-barred claims similar to the issue presented in California. Louisiana does not provide that payment alone may revive the debt, similar to California.

9

payment plans do not create a novation—in reality, Defendant has submitted no evidence at all about the actual functioning of its payment plans. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan*, 210 F.3d at 1102–1103.  As a result, Defendant's novation argument should be rejected.

It is clear that under California law that the payment plans being sought by Defendant would create obligations on which Defendant could sue the debtor.   It is well settled law in California that when a "new promise or acknowledgment of indebtedness is made after the bar of the statute, the new promise creates a new obligation, and is itself the basis of the action." *Hayes v. O'Marr*, 81 Cal. App. 210, 211 (Cal. Ct. App. 1927) (citations omitted). According to courts interpretations of California Code of Civil Procedure §360, "The only distinction between an acknowledgment of a debt before and one after the statute has run, say the courts, is that an acknowledgment or promise made before the statute has run vitalizes the old debt for another statutory period, dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration." *Foristiere v. Alonge*, 98 Cal. App. 563, 566–67 (Cal. Ct. App. 1929). In fact, "Under the law of California, in order to prove that an indebtedness barred by the statute of limitations has been revived, it is only necessary to show a written acknowledgment by the debtor that indicates he treats the indebtedness as subsisting and as a debt he is willing and liable to pay. From such acknowledgment the law implies a promise to pay." *Pac. States Corp. v. Hall, 166 F.2d* 668, 670 (9th Cir. 1948).

With regards to Defendant's handling of its payment plans, a debtor can either enter into an agreement for the payment plans by phone or by Defendant's website. A debtor can log onto Defendant's website, where they will accept certain terms and

10

conditions and can review and agree to payment plan options. McClure Depo. at 69:9-21.[8] In the alternative, a debtor can call Defendant who will discuss repayment terms and reach an agreement regarding the first due date, how payments will be made, and a schedule of payment. *Id.* at 68:22-69:5, 71:14-24. The call would be recorded and Defendant would send a letter to the debtor with the terms of the agreement reached regarding repayment. *Id.* at 70:10-12, 72:2-9. Defendant uses this process to memorialize the agreements made by debtors for payment plans. *Id.* at 72:17-20, 73:16-19. By using this process, Defendant can revive debts that are legally enforceable from the shell of those that previously were not. By failing to disclose this risk to Plaintiff and other debtors, Defendant misleads Plaintiff and debtors regarding the character and status of their debt and the implications of the options put forth in Defendant's letter on that status, thereby putting Plaintiff into a worse position.[9] As a result, Defendant's Letter is deceptive.

### 2. Defendant's Voluntary Policies and Practices Do Not Inoculate It From Liability Nor Prevent A Legal Harm To Debtors

Defendant argues that it and its parent company's policy not to "revive the statute of limitations" once they have expired prevents any harm from being suffered by debtors. But, this argument is ignorant of two fundamental issues. First, Defendant's policy does not change the actual legal impact of a debtor resurrecting the statute of limitations on a debt because the statute of limitations is an affirmative

---

[8] It is unclear to what extent a debtor executes an agreement as part of the "terms and conditions" which would satisfy the novation requirements, but Defendant's did not put forth evidence that it "is not a novation" in its initial Motion.

[9] This mirrors as the Federal Trade Commission has found that "most consumers do not understand their legal rights with respect to time-barred debt." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) (citing FED. TRADE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION 26-27 (2010)).

11

defense that is asserted by the debtor, not a basis for the action asserted by the creditor.  "The statute of limitations is an affirmative defense that is . . . invoked by the defendant." *Adams v. Paul*, 11 Cal. 4th 583, 597, 904 P.2d 1205 (1995).  "[T]he defense of the statute of limitations [is waived] by failing to plead that failing to plead that defense in the answer to the complaint or by specifying the statute of limitations as a ground of its general demurrer." *Minton v. Cavaney*, 56 Cal. 2d 576, 581, 364 P.2d 473 (1961).  As another Court has put it, "revivals of the statute of limitations are controlled not by Midland's policies, but by operation of law." *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2018 WL 723278, at *5 (N.D. Ill. Feb. 5, 2018) ("A revival would be a hazard to Pierre, who may face suit by Midland if it changed its policies or by someone else if Midland sold Pierre's debt to another, less principled collector").  While Defendant may state that it will not sue any debtor who has passed the statute of limitations at any point, this does not change the fact that the debtor will have changed his or her legal position by entering into a novation through a payment plan as described above and reviving the statute of limitations under Cal. C. Civ. Proc. §§ 337 or 360.

Second, Defendant will argue that it does not sue any debtor with an out-of-statute debt and does not sell the debt such that there is no practical harm, but there are two problems with this position.  One, Defendant's voluntary policy does not create a bar that it will not change its practices in the future to cause harm on the legally compromised debts.  While Defendant currently chooses not to change the status of the debts that it records as time-barred even if the legal status has actually changed as a result of payment or agreement, Defendant could change its policies regarding the sale and collection of time-barred debts in the future.  McClure Depo. at 76:8-77:18, 97:9-22.  Two, Defendant already currently does sell time-barred debts to outside companies because Defendant will sell debts back to the original

creditor.  *Id.* at 96:4-7.  There is no legal bar preventing a party from suing on a revived debt and Defendant has presented no such bar either.

Similarly, the fact that Defendant may comply with any consent decrees it has entered into with the CFPB or FTC have no impact on the fundamental issue presented which is whether Defendant's Letter is deceptive to the least sophisticated consumer.  This specific argument has been addressed previously by another Court in this Circuit, and against this specific Defendant in the Illinois Courts.  "[A] consent decree, which is fundamentally a settlement agreement between the parties, necessarily reflects a compromised position" and thus "entitled to limited weight." *White v. First Step Grp. LLC*, No. 216CV02439KJMGGH, 2017 WL 4181121, at *5 (E.D. Cal. Sept. 20, 2017).  *See also Pierre v. Midland Credit Mgmt., Inc.*, No. 16-C-2895, 2018 WL 723278 at *6 (N.D. Ill. Feb. 5, 2018) (declining to afford Chevron deference to the decrees, and citing various cases similarly declining to do so)).  Defendant's arguments that it should be exempt from the requirements of the FDCPA because of its voluntary choice not to sue on debts that it causes to be revived are just smoke and mirrors.

### B. Plaintiff's Derivative Rosenthal Claims Survive

§1788.17 of the RFDCPA mandates that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code statutory regulations contained within the FDCPA, 15 U.S.C. §1692d, and §1692d(5). As explained above, Defendant's actions constitute multiple violations of the FDCPA. To the extent that Defendant has violated any of these provisions of the FDCPA, Defendant has violated the RFDCPA as well.

//

//

1

### C. Plaintiff Has Standing

2
Defendant attempts to create a hypothetical abstract harm when the harm is

3
concrete and particular in this instance—it arises out of Plaintiff's receipt of

4
Defendant's Letter which was misleading and forms the entire basis for this

5
lawsuit.  While the Ninth Circuit has not weighed in on whether the FDCPA

6
creates a substantive privacy right following *Spokeo, Inc. v. Robins*, 136 S. Ct.

7
1540 (2016), many Courts have unequivocally concluded that it does.  In *Verdun v.*

8
*Fid. Creditor Serv.*, No. 14-CV-0036-DHB, 2017 WL 1047109, at *5 (S.D. Cal.

9
Mar. 20, 2017) (collecting cases), the Court concluded that receipt of a debt

10
collection letter missing a necessary disclosure created a substantive violation of

11
the FDCPA that gives rise to a concrete injury.  The Eleventh Circuit in addressing

12
this issue agreed that Congress created the FDCPA to protect consumers from

13
harmful debt collection practices thereby elevating FDCPA violations to

14
cognizable, concrete injuries for Article III purposes.  *See, e.g., Church v.*

15
*Accretive Health, Inc.*, 654 Fed.Appx. 990, 994 (11th Cir. 2016) (receipt of debt

16
collection letter missing required disclosure was a concrete injury to a substantive

17
right created by Congress).  The District Court for the Eastern District of New

18
York held that a violation of the FDCPA created a concrete injury sufficient to

19
establish Article III standing.  *Bautz v. ARS Nat'l Servs., Inc.*, No. 16-768, 2016

20
WL 7422301, at *7–12 (E.D.N.Y. Dec. 23, 2016).

21
In this case, Plaintiff has clearly pled and argued how Defendant's Letter

22
was deceptive and mischaracterized the character of Plaintiff's debt and its legal

23
status.  Defendant's violation of the FDCPA through its deceptive letter is a

24
violation of a substantive right created by Congress under the FDCPA to protect

25
consumers from harmful debt collection practices.  Plaintiff clearly has standing.[10]

26

27
[10] Defendant's argument is half-hearted, as it cites absolutely no decisions since

28
*Spokeo*, the decision is cites as creating the potential issue with standing in the first
place.

14

D. The FDCPA and RFDCPA Are Constitutional

Defendant has decided to conclude its Motion for Summary Judgment with a two page colloquy that the FDCPA and RFDCPA should be tossed out for unfairly putting restrictions on debt collectors only and not debtors and accordingly infringing on debt collectors' First Amendment Rights. Defendant's argument glosses over both the proper standards and the scrutiny that would apply.

As an initial matter, a key dispute is whether Defendant's speech is "commercial" or "non-commercial" speech, as two different levels of scrutiny apply depending on the context. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561, 100 S. Ct. 2343, 2349, 65 L. Ed. 2d 341 (1980) (citing *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976)). Debt collection is commercial speech, because it concerns the economic interests of the speaker (the debt collector) and the audience (the debtor). Commercial speech is subject to a four-part analysis to determine whether it is protected by the First Amendment:

> "For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566.

In reality, the type of deceptive language circumscribed by the FDCPA and RFDCPA results in the inquiry ending on the first step of the analysis. "[T]here can be no constitutional objection to the suppression of commercial messages that do not

15

accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it, or commercial speech related to illegal activity." *Id.* (citations removed).  These are exactly the types of communications that Congress sought to enjoin when it passed the FDCPA in order to "eliminate abusive debt collection practices by debt collectors," including the many forms of deception codified within the FDCPA.  15 U.S.C. § 1692(e). Defendant is taking the position that the United States and California cannot engage in viewpoint or content discrimination in order to prevent it and other debt collectors from engaging in deceptive conduct, but no protections for such deceptive conduct have ever been granted, and were exactly circumscribed by the Supreme Court in *Cent. Hudson Gas & Elec. Corp.*

In addressing Defendant's argument in the alternative, Plaintiff was able to locate the published decision of *Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336 (S.D. Fla. 2008) which is persuasive on the topic.  In *Berg*, defendant called plaintiff and left voicemails on his answering machine which was heard by third parties in violation of 15 U.S.C. § 1692c(b). *Id.* at 1339.  Defendant argued there, as Defendant argues here, that the FDCPA was an impermissible restriction on defendant's free speech.  The Court found that the speech concerned under the FDCPA was only subject to intermediate scrutiny because it is "speech on matters of purely private concern is of less First Amendment concern." *Id.* at 1344 (citing *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 759, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985)).[11]  Under intermediate scrutiny, the restrictions would be constitutional if they are "narrowly tailored to serve a significant governmental interest." *Id.* (citing *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1256

---

[11] The Court also noted that if the FDCPA was subject to strict scrutiny, "[s] uch a finding would lead to strict scrutiny analysis of any legislation requiring discretion in information disclosure by debt collectors, financial institutions, medical personnel, or others dealing with sensitive personal information."

16

(11th Cir. 2007)).  Abusive debt collection practices and invasion of privacy are significant government interests that Congress intended to address by enactment of FDCPA.  *Id.*  The FDCPA was narrowly tailored to serve this significant government interest, and thus was held constitutional.  This Honorable Court should find the same.

Defendant's last argument that the law is unconstitutional because it is under-inclusive and does not include all types of debt collectors is also not well taken. [12] As the Supreme Court recently held in *Williams-Yulee v. Florida Bar*, "the First Amendment imposes no freestanding 'underinclusiveness limitation.'" 135 S. Ct. 1656, 1668  (2015) (quoting *R.A.V. v. St. Paul,* 505 U.S. 377, 387 (1992)).  Thus, a law "need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Id.* The court has "accordingly upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests." *Id.*

Defendant's half-hearted request to have the FDCPA and RFDCPA declared unconstitutional should be denied.

## VI.   Conclusion

For these reasons, the Court should deny Defendant's Motion for Summary Judgment with prejudice in full.

Dated: July 1, 2019                                Law Offices of Todd M. Friedman


                                                    By:___/s Todd M. Friedman_____
                                                          Todd M. Friedman, Esq.
                                                          Attorneys for Plaintiff

---

[12] Defendant's constitutional arguments are reminiscent of throwing spaghetti at the wall and seeing if anything sticks, except in this instance it doesn't appear that Defendant even permitted any of its scattershot arguments to cook in the pot before being tossed out.

## **CERTIFICATE OF SERVICE**

I, Todd M. Friedman, do hereby certify that the Plaintiff's Opposition to Defendant's Motion for Summary Judgment was served this 1st day of July, 2019, on all counsel of record via the Court's ECF system.

/s/ Todd M. Friedman

Todd M. Friedman