THOMAS F. LANDERS [SBN 207335]
tlanders@swsslaw.com
LEAH S. STRICKLAND [SBN 265724]
lstrickland@swsslaw.com
MEI-YING M. IMANAKA [SBN 280472]
mimanaka@swsslaw.com
SOLOMON WARD SEIDENWURM & SMITH, LLP
401 B Street, Suite 1200
San Diego, California 92101
(t) 619.231.0303

Attorneys for Defendant
MIDLAND CREDIT MANAGEMENT, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKY D. SHADOW, an Individual on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendant. | Case No. 3:17-cv-02277-L-MDD<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**<br><br>[No Hearing Pursuant to Local Rules]<br><br>Judge: Hon. M. James Lorenz<br>Mag. Judge: Hon. Mitchell D. Dembin |

I.  **INTRODUCTION.**

Plaintiff[1] ignores a number of arguments that require entering judgment in Midland Credit's favor. While describing this motion as a second bite at the apple, Plaintiff completely ignores several significant developments since that ruling: 1) the California legislature amended the Rosenthal Act to require the Disclosure's precise language; 2) Midland Credit submitted substantial and unrebutted evidence that it had no intent to revive the statute of limitations ("SOL"); and 3) across the country, court after court has rejected the same theory Plaintiff relies on here, frequently at the summary judgment stage, including Midland Credit's recent victory over this same theory in *Elston v. Encore Capital Grp.*, 2019 U.S. Dist. LEXIS 115625, at *15 (E.D. Wash. July 11, 2019) ("*Elston*"). While Courts may disagree on whether theories like the one pleaded by Plaintiff survive at the pleadings stage, as a matter of law Plaintiff's theory, which relies on pure speculation, fails at this stage in the face of the undisputed evidence. Thus, the Court should enter judgment in Midland Credit's favor.

II.  **PLAINTIFF DOES NOT ADDRESS, AND THUS CONCEDES, THAT CALIFORNIA LAW SPECIFICALLY REQUIRES THE DISCLOSURE MIDLAND CREDIT USED.**

Plaintiff's case hinges on whether, based on California law concerning revival, the Disclosure Midland Credit included in the Letter was false or misleading because it did not warn a partial payment could revive the SOL. But in her opposition to Midland Credit's motion, Plaintiff fails to address, and thus concedes, that when California amended the Rosenthal Act to require the exact Disclosure Midland Credit used, with no partial payment disclosure, it removed all doubt about the application of state law in this regard. The exact language at issue in the Letter has been required for debt buyers in California since 2014, and it is now also required under the Rosenthal Act. *See* Cal. Civ. Code §§ 1788.14(d)(1), 1788.52(d)(2); Cal. Stats. 2018 ch. 247 (AB 1526) (RJN Ex. F [Dkt # 22-3]). This amendment to the Rosenthal Act took effect <u>after</u> this Court

---

[1]  Defined terms have the same meaning as in Midland Credit's moving papers.

decided Midland Credit's motion to dismiss.

Including the Rosenthal Act's required disclosure verbatim cannot violate the Rosenthal Act; any contrary conclusion would be absurd. *Allen v. Sully-Miller Contracting Co.*, 28 Cal. 4th 222, 227 (2002) ("Any interpretation [of a statute] that would lead to absurd consequences is to be avoided."). Because the accuracy of the Disclosure depends on application of state law regarding revival, California law also controls whether the language is false or misleading under the FDCPA.

Relatedly, Plaintiff now argues for the first time that the language "will not sue" is deceptive, suggesting Midland Credit should have stated it "cannot sue."[2] There are multiple reasons why Plaintiff's new theory is incorrect. First, stating definitively that the SOL has expired on a contract claim requires a legal certainty that most parties do not have. Moreover, as Plaintiff argues in her opposition, the SOL is an affirmative defense. (Plaintiff's Opposition, at pp. 11-12.) For that reason, Midland Credit *could* sue on a debt which is beyond the applicable SOL, but it would face potential dismissal on the basis of the defense. Instead, the only thing a party can say with certainty on such an issue is their own intention not to sue based on the age of a debt, which is what Midland Credit did. The Rosenthal Act now clarifies this issue as a matter of law, specifically requiring debt collectors to state they "will not" sue. Cal. Civ. Code § 1788.14(d)(1). Requirements by the CFPB and the FTC state the same. (Consent Order ¶ 133(b)(ii) [RJN Ex. A]; FTC Consent Decree, pp. 10-14 [RJN Ex. B].) Plaintiff's "cannot sue" theory is simply contrary to the applicable law.

Other cases concluding this language was misleading dealt either with distinguishable state law, different disclosure language, or both. In *White*, the letter stated the collector was authorized to "settle" the debt—language that is not present in

---

[2] Plaintiff argues she alleged this theory in the FAC citing paragraph 41. However, such an allegation appears nowhere in the FAC, and certainly not in paragraph 41. A party cannot oppose summary judgment by raising unpleaded theories. *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006).

the Letter at issue here. *White v. First Step Grp. LLC*, 2017 U.S. Dist. LEXIS 153569, at *19 (E.D. Cal. Sep. 19, 2017) ("*White*") (noting "three recent Circuit decisions have found a collection letter that offers to "settle" and fails to address the effects of a partial payment may violate the FDCPA").[3] In *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016), the letter offered to "settle" a debt, making no disclosure at all regarding the SOL or that the debt collector would not sue. *See also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) (addressing Illinois law; letters used word "settle"; defendants "gave [no] hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense"); *Baye v. Midland Credit Mgmt,* 2017 U.S. Dist. LEXIS 180062, at *4 (E.D. La. Oct. 31, 2017) (on motion to dismiss applying Louisiana's law on "renunciation of prescription," plaintiff sufficiently stated FDCPA claim). The *Baye* court felt bound by two things— that it was possible to revive under Louisiana law by entering into a payment plan, and by the Fifth Circuit's decision in *Daugherty*. 2017 U.S. Dist. LEXIS 180062, at *13. Here, there is no Ninth Circuit law requiring this outcome, and California law does not include Louisiana's law on "renunciation of prescription." Moreover, the in-circuit court in *Stimpson* declined to follow *Baye*. *Stimpson v. Midland Credit Mgmt.*, 347 F. Supp. 3d 538, 551 (D. Idaho 2018) ("*Stimpson*") (distinguishing *Baye* because, *inter alia*, "there was a risk that a partial payment could revive the stale debt").

By contrast, in jurisdictions applying laws like California's, and even some that permit revival through partial payments, court after court has concluded that letters with disclosure language identical to the Disclosure at issue do not violate the FDCPA. *Elston*, 2019 U.S. Dist. LEXIS 115625, at *15 ("partial payment or a promise to pay does not, alone, revive the debt"); *Gutierrez v. Portfolio Recovery Assocs., LLC*, 2019 U.S. Dist. LEXIS 18553 (C.D. Cal. Feb. 1, 2019) ("*Gutierrez*"); *Trichell v. Midland Credit Mgmt.,* 2018 U.S. Dist. LEXIS 148700, at *2 (N.D. Ala. Aug. 31, 2018); *Swann*

---

[3] The *White* court was also wrong about California law regarding partial payments.

1  *v. Dynamic Recovery Sols., LLC*, 2018 U.S. Dist. LEXIS 201190, at *1 (N.D. Ala.
2  Nov. 28, 2018); *Stimpson*, 347 F. Supp. 3d at 551; *Jones v. Synergetic Commun., Inc.*,
3  2018 U.S. Dist. LEXIS 198087, at *24 (S.D. Cal. Nov. 20, 2018) ("*Synergetic*"); *see*
4  *also Cooper v. Midland Credit Mgmt.*, 2018 U.S. Dist. LEXIS 208858, at *7 (M.D. Ga.
5  Dec. 11, 2018) ("*Cooper*") ("…the Court would have to infer that … 'we will not sue
6  you for the debt' actually means 'we will not sue you for the debt unless you make a
7  partial payment.' The Court finds that such an inference is implausible…").

### III.  MIDLAND CREDIT WAS ENTITLED TO RELY IN GOOD FAITH ON THE CONSENT ORDER, AND PLAINTIFF'S UNALLEGED THEORY REGARDING PLACEMENT OF THE DISCLOSURE ALSO FAILS.

Plaintiff argues Midland Credit's compliance with the Consent Order is irrelevant and affords Midland Credit no protection against Plaintiff's arguments, citing an out-of-circuit decision and a lone Eastern District of California case. *White*, 2017 U.S. Dist. LEXIS 153569, at *5; *Pierre v. Midland Credit Mgmt.*, 2018 U.S. Dist. LEXIS 18860 (N.D. Ill. Feb. 5, 2018) ("*Pierre*"). But more recent Central District decisions recognize the importance of a debt collector's good faith attempt to comply with its own consent decrees with the CFPB. *E.g., Pariot v. Portfolio Recovery Assocs., LLC*, 2019 U.S. Dist. LEXIS 110586, at *8-9 (C.D. Cal. June 25, 2019); *Gutierrez*, 2019 U.S. Dist. LEXIS 18553.

First, the FDCPA creates a safe harbor for "any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB]." 15 U.S.C. § 1692k(e). "A publicly available consent decree has a similar—if not stronger—effect as an advisory opinion regarding the conduct at issue." *Gutierrez*, 2019 U.S. Dist. LEXIS 18553, at *3; *see also Pariot*, 2019 U.S. Dist. LEXIS 110586, at *9 (same). "[B]y agreeing to the language in the consent decree, the CFPB implicitly found that the language complied with the FDCPA." *Gutierrez*, 2019 U.S. Dist. LEXIS 18553, at *3. Accordingly, Midland Credit followed its own Consent Order by using the precise language mandated by the CFPB, in the precise location proscribed by the CFPB—the front of letter. (Consent Order ¶ 133(b)(ii) [RJN Ex. A].)

Plaintiff argues (but did not allege) that the size or placement of the Disclosure was misleading because it was not prominent enough. This is simply incorrect. First, California does not require any particular font size or location; its only requirement is that the notice be included in "the first written communication provided to the debtor after the debt has become time-barred." Cal. Civ. Code § 1788.14(d)(1). The CFPB and the FTC simply require that the notice be "easily recognizable and understandable in language and syntax to an ordinary Consumer," and on the first page of a multi-page print document. (Consent Order ¶ 133(b)(ii) [RJN Ex. A]; FTC Consent Decree, pp. 10-14 [RJN Ex. B].) Midland Credit did not hide the Disclosure; it is on the front of the Letter in the same font as the body. Indeed, it complied with the Consent Order by including the Disclosure in a similar location and font size as the disclosure approved by Judge Bashant in *Synergetic*, 2018 U.S. Dist. LEXIS 198087, at *24.

The fact that Midland Credit included graphical features or bold face in other portions of the Letter does not negate or contradict the Disclosure. In fact, there was no language contradicting the Disclosure, and therefore no language that would mislead or confuse the consumer, anywhere on the Letter. *See Stimpson*, 347 F. Supp. 3d at 551 ("Midland Credit's letter does not falsely state or indirectly suggest that it has the ability to sue on the time-barred debt.") (granting summary judgment).

## IV. ANY NEW CONTRACT WOULD INCLUDE MIDLAND CREDIT'S PROMISE "BECAUSE OF THE AGE OF THE DEBT, WE WILL NOT SUE."

In its moving papers, Midland Credit argued there are several legal impediments to contract formation, each of which is fatal to Plaintiff's theory. In response, Plaintiff relies almost entirely on the argument that the Court has already rejected Midland Credit's argument. As this Court knows, at the motion to dismiss stage the Court considered only the allegations in the FAC; it did not have evidence of Midland Credit's intent. Now, the Court has the undisputed evidence that Midland Credit's policy was never to revive an expired SOL and never to sue once the original SOL expires; and that it followed those policies. (McClure Decl. ¶¶ 17-19.)

1 | Plaintiff does not contest that the signed written acknowledgment of the debt
2 | required by Section 360 is a novation, *see Eilke v. Rice*, 45 Cal. 2d 66, 73 (1955), and
3 | that it is "'subject to all the rules concerning contracts in general.'" *Wells Fargo Bank*
4 | *v. Bank of Am.*, 32 Cal. App. 4th 424, 431 (1995) (*quoting* Cal. Civ. Code § 1532).
5 | Plaintiff, however, ignores the inevitable outcome of these legal principles, the most
6 | fundamental of which is that under basic contract rules, Shadow could not have been
7 | "tricked" into entering a new contract because "deception cannot plausibly show a
8 | meeting of the minds or an agreement as to the terms of the novation sufficient to
9 | create a novation." *Synergetic,* 2018 U.S. Dist. LEXIS 198087, at *24; *see also* Cal.
10 | Civ. Code § 1640 ("When, through fraud, mistake, or accident, a written contract fails
11 | to express the real intention of the parties, such intention is to be regarded, and the
12 | erroneous parts of the writing disregarded."). The undisputed evidence is that <u>neither</u>
13 | Midland Credit nor Shadow intended to revive the expired SOL.

14 | Instead, Plaintiff argues Midland Credit's (and, presumably, Plaintiff's) intent is
15 | somehow irrelevant on the issue of contract formation. In support, Plaintiff cites
16 | *Pierre*, 2018 U.S. Dist. LEXIS 18860, which discusses Illinois law. *Id.* at *9. *Pierre* is
17 | distinguishable on a number of grounds, primarily that Illinois law does not require a
18 | written contract to remove the bar of the SOL; there, a partial payment suffices. *See*
19 | *Ruhl v. Gambrill*, 175 Ill. App. 641, 644 (1912). California law, rather, requires a
20 | written novation, and a partial payment is insufficient. It is for this reason the case law
21 | has developed a circuit split, which the court describes in *Stimpson*, 347 F. Supp. 3d at
22 | 550-51 (distinguishing *Pierre*).

23 | Intent is king in contract formation; intent is required for novation under Section
24 | 360; and the undisputed evidence shows that Midland Credit did not intend to create an
25 | obligation on which it could sue. Indeed, it expressly stated otherwise in the Letter:
26 | "…we will not sue you for it." The evidence of Midland Credit's intent is the Letter
27 | itself with its Disclosure, as well as the undisputed evidence of Midland Credit's
28 | policies and procedures. "A contract must be so interpreted as to give effect to the

1  mutual intention of the parties as it existed at the time of contracting….” Cal. Civ.
2  Code § 1636; *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995), *as modified on*
3  *denial of reh'g* (Oct. 26, 1995). The evidence is undisputed that the mutual intention of
4  the parties was not to renew the SOL; under California law any new contract would
5  have included Midland Credit's promise not to sue. Indeed, the Opposition attaches
6  Mr. McClure's deposition testimony that the Disclosure would have been given *again*
7  to Plaintiff, regardless of how she responded to the Letter.  It would have been given
8  verbally if she called, would have appeared on Midland Credit's website, and would be
9  in any confirming letter sent to Plaintiff. (McClure Depo. at pp. 68:22, 70:4, 70:13-
10 71:13, 72:2-9,17-20, 73:10-13 [Friedman Ex. A].)

11      In short, there was no risk to Plaintiff in responding to the Letter, because
12 neither party intended for any response by Plaintiff to revive the statute or create an
13 obligation enforceable against Plaintiff.

## V.  MIDLAND CREDIT MET ITS BURDEN BY SUBMITTING UNDISPUTED EVIDENCE OF ITS POLICIES AND PROCEDURES.

16      Plaintiff misstates the legal standard for summary judgment and ignores the
17 evidence Midland Credit submitted. Plaintiff appears to argue that she theoretically
18 could have responded to the Letter in a way that unwittingly would have revived the
19 SOL. To the extent Plaintiff relies on any theoretical written confirmations Midland
20 Credit would have sent, under Section 360 Midland Credit's writings are insufficient; it
21 is only Plaintiff's <u>signed</u> writings that can create a new agreement. Moreover, intent of
22 the parties controls contract formation and interpretation. Midland Credit submitted
23 undisputed evidence that its intent, based on its policies, procedures, and the very
24 language in the Letter, was not to renew the SOL. (McClure Decl. ¶¶ 18-19 & Exs. 5,
25 6.) This meets Midland Credit's burden to show that Plaintiff cannot meet an element
26 of her claim – that Midland Credit's disclosure "because of the age of the debt, we will
27 not sue" was false or misleading. *See Cooper*, 2018 U.S. Dist. LEXIS 208858, at *13
28 n.4 ("Midland would be entitled to summary judgment if the Court let discovery

proceed and discovery revealed that Midland had no intention of pursuing a lawsuit to recover stale debts revived under Georgia law by partial payments….").

The burden thus shifted to Plaintiff to come forward with evidence showing a dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986), and she has failed to meet her burden. To overcome Midland Credit's evidence, Plaintiff would have had to come forward with evidence (<u>not</u> speculation) that Midland Credit would do what it said it would not – renew the SOL, and sue on the Chase Account. She has not done so. Instead, Plaintiff would have the Court believe that, in spite of the language in Midland Credit's Letter, and its policies and procedures, Midland Credit might have sued her anyway. This is pure speculation unsupported by evidence. Speculation is insufficient, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), and Plaintiff has therefore failed to meet her burden.

It is important to note that Plaintiff's main criticism of Midland Credit's policies is that they *could* change in the future. She admits they are Midland Credit's current policies, and the evidence is undisputed that Midland Credit follows them. However, there is no evidence of any contemplated policy changes. Plaintiff is speculating, and "[s]uch speculation does not support an FDCPA claim." *Cooper*, 2018 U.S. Dist. LEXIS 208858, at *13. It is therefore insufficient to oppose summary judgment.

## VI. HYPOTHETICAL FUTURE CHANGES TO MIDLAND CREDIT'S POLICIES ARE IRRELEVANT SPECULATION.

Plaintiff has not sued Midland Credit for anything it has said or done. Instead, Plaintiff speculates about what might happen in the future—that Plaintiff might respond in a way to trigger Section 360, and Midland Credit might change its policy on suing, or might sell the debt to someone who would then sue.

These points are irrelevant. The parties' intent controls contract formation, so their intent not to revive the SOL would be binding on any theoretical agreement. If the Chase Account were sold, any new creditor would step into Midland Credit's shoes, and would be bound by any limitations set out in any agreement. *Unifund CCR, LLC v.*

*Dear,* 243 Cal.App.4th Supp. 1, 6 (2015) (assignee stands in shoes of assignor). As discussed above, that agreement would explicitly exclude the right to sue Shadow, so such a sale would not harm Shadow in any way. It is Midland Credit's policy not to renew the SOL, and it is Midland Credit's intent <u>at the time of entering the contract</u> that matters. Cal. Civ. Code § 1636. Any future speculative policy change would not change the parties' mutual intent at the time of contracting – the date of the Letter.

Plaintiff's insinuation that Midland regularly sells "debts back to the original creditor" so that those debts can be collected on (Opposition 12:27-13:2), adds further contingencies that defeat Article III standing, as discussed in Midland Credit's moving papers. Plaintiff's theory now also speculates that (1) the original creditor will recall the debt; and (2) the original creditor will then sue on the debt, despite the representation in the Letter that Midland Credit would not sue. None of these contingent future events may occur; thus, Plaintiff has no Article III standing to raise them. *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580–81 (1985).

Plaintiff also ignores the record and misrepresents Mr. McClure's deposition testimony. In fact, when asked whether Defendants resell debt, Mr. McClure said nothing more than what is contained in Midland's Debt Resale Policy (which makes clear that Midland does not resell debts for any purpose, much less to enable future collection activity). Specifically, he testified that Midland Funding does not resell debt, but that intercompany transfers and transfers back to the original creditor are technical exceptions to the policy (McClure Depo. 96:4-7.) Mr. McClure was not asked, and did not testify that such transfers back to the original creditor are to enable the original creditor to collect on the account. It is in fact well settled in the debt-buying industry that such transfers are routine, and typically occur early in the life of an account for technical reasons – not on accounts that, like the one here, are past the SOL. (McClure Supp. Decl. at ¶¶2-3; Consent Order ¶130.) Plaintiff's attempt to wrench Mr. McClure's testimony from its context does not alter the undisputed fact that Midland Funding does not sell debt so future collectors can pursue collection activity. Other

courts that have reviewed these very same issues in the context of the Debt Resale Policy have agreed, and have granted summary judgment in Defendants' favor. *See, e.g.*, *Stimpson* and *Elston*. This Court should as well.

Finally, Plaintiff has no standing to base a claim on speculative future events, none of which are likely to occur. *See Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009). In *Elston*, 2019 U.S. Dist. LEXIS 115625, at *11, the Eastern District of Washington came to exactly this conclusion on a claim identical to the one here. If something did change in the future and Plaintiff were <u>then</u> sued, she would of course have standing at that time. *Cooper,* 2018 U.S. Dist. LEXIS 208858, at *7 ("[I]f Midland *did* renege on its promise… [the debtor] could have a claim at that time."). But she has no such claim today.

## VII. <u>THE STATUTES VIOLATE THE FIRST AMENDMENT.</u>

Commercial speech is a type of content-based discrimination, and it is permissible if it meets the standards set forth in *Hudson*; <u>viewpoint</u> discrimination is not. The case Plaintiff cites, *Berg v. Merchs. Ass'n Collection Div.*, 586 F. Supp. 2d 1336, 1344 (S.D. Fla. 2008), does not address viewpoint discrimination distinct from content based discrimination. It also predates the Supreme Court's rulings in *Matal v. Tam*, 137 S. Ct. 1744, 1767 (2017), and *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011), which make crystal clear that even commercial speech regulations must be viewpoint neutral to pass constitutional muster. Neither the FDCPA nor the Rosenthal Act are viewpoint neutral as between debtors and debt collectors. Both statutes are therefore unconstitutional for the reasons set forth in Midland Credit's opening brief.

## VIII. <u>CONCLUSION.</u>

Midland Credit requests that this Court grant this Motion in its entirety.

DATED: July 15, 2019         SOLOMON WARD SEIDENWURM & SMITH, LLP

By: */ Thomas F. Landers*
THOMAS F. LANDERS
Attorneys for Defendant MIDLAND CREDIT MANAGEMENT, INC.