1  JOSEPH H. HUNT
   Assistant Attorney General
2
   LESLEY FARBY
3  Assistant Director, Federal Programs Branch

4  JOSHUA C. ABBUHL
   D.C. Bar No. 1044782
5  Trial Attorney
   United States Department of Justice
6  Civil Division, Federal Programs Branch
   1100 L St. NW
7  Washington, D.C. 20005
   (202) 616-8366 (tel.)
8  (202) 616-8470 (fax)
   Joshua.Abbuhl@usdoj.gov
9
   *Attorneys for the United States of America*
10
11          **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
12

13                                        | Case No. 3:17-cv-02277-L-MDD

14  SKY D. SHADOW, an individual on
    behalf of herself and all others       **UNITED STATES' MEMORANDUM**
15  similarly situated,                     **OF LAW IN SUPPORT OF THE**
                                            **CONSTITUTIONALITY OF THE**
16               *Plaintiff*,               **FAIR DEBT COLLECTION**
                                            **PRACTICES ACT**
17           v.

18  MIDLAND CREDIT
    MANAGEMENT, INC.,                       Judge:  Hon. M. James Lorenz
19                                          Mag. Judge:  Hon. Mitchell D. Dembin

20               *Defendant*.

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT..........................................................................................................5

I.     The Court Should Resolve All Nonconstitutional Issues Before
Addressing the Constitutionality of the FDCPA...............................................5

II.    The FDCPA Regulates Commercial Speech and Is Subject to
Intermediate Scrutiny. .....................................................................................6

      A.     The Speech at Issue Is Commercial Speech. ........................................6

      B.     The FDCPA Does Not Discriminate Based on Viewpoint...................7

III.    The FDCPA Passes Intermediate Scrutiny. ...................................................11

IV.    The FDCPA Would Also Pass Strict Scrutiny. ..............................................12

CONCLUSION.....................................................................................................15

1

# TABLE OF AUTHORITIES

2

## Cases

3

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
4
   447 U.S. 557 (1980) ...................................................................................... 11

5

*Dabish v. Infinitelabs, LLC*,
6
   No. 13-cv-2048, 2014 WL 4352064 (S.D. Cal. Sept. 2, 2014) ........................... 13

7

*Edenfield v. Fane*,
8
   507 U.S. 761 (1993) ...................................................................................... 12

9

*First Resort, Inc. v. Herrera*,
10
   860 F.3d 1263 (9th Cir. 2017) ......................................................................... 8

11

*Fla. Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) ................................................................................. 11, 12
12

13

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .......................................................................................... 5
14

15

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011) ........................................................................... 6
16

17

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979) ........................................................................................ 5
18

19

*Interpipe Contracting, Inc. v. Becerra*,
   898 F.3d 879 (9th Cir. 2018)
20
   *cert. denied* 139 S. Ct. 2744 (2019) ............................................................... 8

21

*Italian Colors Rest. v. Becerra*,
22
   878 F.3d 1165 (9th Cir. 2018) ....................................................................... 11

23

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010) ....................................................................................... 3
24

25

*Koby v. ARS Nat'l Servs., Inc.*,
   No. 09-cv-0780, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) ...................... 7, 12
26

27

*Mark v. J.C. Christensen & Assocs., Inc.*,
   No. CIV 09-100-ADM, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) ................... 7

28

*McCullen v. Coakley*,
   573 U.S. 464 (2014)..................................................................................9, 10

*Mejia v. Time Warner Cable, Inc.*,
   No. 15-cv-6445 (JPO), 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017).................15

*N.L.R.B. v. Gissel Packing Co.*,
   395 U.S. 575 (1969)........................................................................................11

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)...................................................................................9, 10

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978)........................................................................................13

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015)...................................................................................13

*Reno v. ACLU*,
   521 U.S. 844 (1997)........................................................................................15

*United States v. Central Adjustment Bureau, Inc.*,
   823 F.2d 880 (5th Cir. 1987) .....................................................................7, 12

*United States v. Edge Broad. Co.*,
   509 U.S. 418 (1993)........................................................................................11

*United States v. United Foods, Inc.*,
   533 U.S. 405 (2001)..........................................................................................6

**Statutes**

15 U.S.C. § 1692(a) .............................................................................................10

15 U.S.C. § 1692a(5) .............................................................................................3

15 U.S.C. § 1692.....................................................................................................1

15 U.S.C. § 1692e..........................................................................................1, 3, 8

15 U.S.C. § 1692f..............................................................................................1, 3

Cal. Civ. Code § 1788.17.......................................................................................4

1

**<u>Legislative Materials</u>**

H.R. Rep. No. 95-131 ............................................................................................. 14

S. Rep. No. 95-382 ........................................................................................... 9, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Defendant Midland Credit Management, Inc. has raised a First Amendment challenge to the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").  As relevant here, the FDCPA prohibits debt collectors from using false, deceptive, or unfair means to collect a consumer debt.  *See* 15 U.S.C. §§ 1692e; 1692f. Plaintiff Sky D. Shadow claims that Defendant Midland Credit Management, Inc. violated the statute by sending her a misleading debt collection letter.  In response, Defendant argues that the FDCPA unconstitutionally discriminates based on viewpoint because the statute's prohibition on false and misleading debt collection practices applies only to debt collectors and not to debtors.  In other words, Defendant believes that the statute is unconstitutional because it does not impose liability *on debtors* for making misleading statements about their debt.  That remarkable position is not the law.  A consumer protection statute need not expose consumers to liability in order to be constitutional.

As a threshold matter, however, the Court should not address Defendant's constitutional argument until all other nonconstitutional issues have been exhausted. Defendant has moved for summary judgment on a variety of nonconstitutional grounds, and the Court should resolve all those possible grounds first in order to avoid a potentially unnecessary constitutional question.

If the Court does reach the constitutional question, the Court should reject Defendant's challenge.  Defendant's argument depends on the Court finding that the

FDCPA is subject to strict scrutiny, which Defendant believes the statute cannot survive. But the FDCPA is not subject to strict scrutiny. Rather, the statute is subject only to intermediate scrutiny since it is a regulation of commercial speech. Although Defendant argues that even commercial speech regulations are subject to strict scrutiny if they discriminate based on viewpoint, this too is irrelevant because the FDCPA is viewpoint-neutral. Viewpoint discrimination occurs when a law discriminates based on a speaker's ideology or perspective. As the text and legislative history of the FDCPA make clear, Congress did not pass the FDCPA in order to suppress an ideology or perspective held by debt collectors, but rather to prohibit abusive and misleading practices that Congress found were being conducted primarily by debt collectors. Economic regulations do not amount to viewpoint discrimination simply because they are narrowly targeted to the prime source of offensive conduct.

Accordingly, the FDCPA is subject only to intermediate scrutiny, which it easily passes. Under intermediate scrutiny, prohibitions of false or deceptive commercial speech are deemed constitutional without further inquiry. But even if strict scrutiny somehow did apply, the FDCPA would satisfy that standard of review because the statute is narrowly tailored to advancing a compelling interest in protecting consumers from false and deceptive debt collection practices.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# BACKGROUND

"Congress enacted the FDCPA in 1977 . . . to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).  As pertinent here, the statute makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  A debt collector violates that provision by, among other things, falsely representing "the character . . . or legal status of any debt," *id.* § 1692e(2)(A), or by using "any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10).  The FDCPA also makes it unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA applies only to consumer debts.  15 U.S.C. § 1692a(5) (defining "debt" as "any obligation . . . to pay money arising out of a transaction in which the money . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes").

Plaintiff brings this putative class action for damages under separate provisions of the FDCPA, specifically 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.  First Amended

Compl., ECF No. 4 ("FAC").[1]  This case arises out of efforts by Defendant to collect a $1,878 credit card debt.  *See* FAC ¶ 27; Mem. in Support of Def. Mtn. for Summ. J., ECF No. 22-1, at 3 ("Def. Mem.").  Although the statute of limitations to sue to collect that debt has expired, Defendant is still trying to collect it outside of litigation. FAC ¶ 34; Def. Mem. at 1.  As part of its debt collection efforts, Defendant sent Plaintiff a letter requesting that she repay the debt and offered three different payment plans, each with varying discounts and timeframes for payment.  *See* FAC ¶ 32; Decl. in Support of Def. Mot. for Summ. J., ECF No. 22-2, Ex. 4 ("Def. Letter").  The letter included the following disclaimer:  "The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it."  FAC ¶ 33; Def. Letter.  Plaintiff claims that this statement is deceptive and misleading, and therefore a violation of the FDCPA, because it failed to inform Plaintiff that any partial payment on the debt would have revived the statute of limitations and allowed Defendant to sue Plaintiff for the entire amount of the debt.  FAC ¶¶ 34-37.

Plaintiff seeks to represent a class of all California residents who, within one year of the filing of the complaint and subject to various exclusions, received similar debt collection letters from Defendant.  *Id.* ¶ 13.  According to Plaintiff, Defendant's actions were "knowing and willful."  *Id.* ¶¶ 45, 49.

---

[1] Plaintiff also seeks damages under a state-law analogue of the FDCPA.  FAC ¶ 1; *see* Cal. Civ. Code § 1788.17.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant has moved for summary judgment on both constitutional and nonconstitutional grounds.  *See* Def. Mem.  On June 28, 2019, Defendant filed a Notice of Constitutional Question.  *See* ECF No. 25.  On August 22, 2019, the United States acknowledged the constitutional question and requested additional time to determine whether to intervene.  *See* ECF No. 31.  The Court granted the motion and extended the intervention deadline to November 1, 2019.  *See* ECF No. 32.

## ARGUMENT

**I.**     **The Court Should Resolve All Nonconstitutional Issues Before Addressing the Constitutionality of the FDCPA.**

As an initial matter, this Court should not address the constitutionality of the FDCPA until it resolves all other nonconstitutional issues presented in Defendant's motion for summary judgment.  "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available.").

In addition to its constitutional challenge, Defendant raises a slate of other arguments in support of summary judgment.  For example, Defendant argues (1) that its letter is not misleading because, under California law, it is impossible for partial payments to revive a statute of limitations; (2) that even if Plaintiff could revive the statute of limitations, Defendant would not sue Plaintiff for the entire debt; and

(3) that Defendant cannot be liable for its letter because its language was endorsed by the Consumer Financial Protection Bureau as well as California law.  *See* Def. Mem. at 10-19.  As a matter of constitutional avoidance, the Court should first address those issues before reaching Defendant's First Amendment challenge.

## II.    The FDCPA Regulates Commercial Speech and Is Subject to Intermediate Scrutiny.

The crux of Defendant's argument is that the FDCPA is subject to strict scrutiny, as Defendant does not attempt to argue that the statute would fail any lesser standard of review.  *See* Def. Mem. at 24-25.  Defendant contends that strict scrutiny is warranted because (A) the speech at issue here is not "commercial speech," which would be subject only to intermediate scrutiny, and (B) even if the speech here does qualify as commercial speech, the FDCPA is nonetheless subject to strict scrutiny because the statute discriminates based on viewpoint.  *See id.* at 22-24.  Both contentions are meritless.

### A.    The Speech at Issue Is Commercial Speech.

"Commercial speech is 'defined as speech that does no more than propose a commercial transaction.'"  *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)).  Defendant's only argument that its debt collection letter does not qualify as commercial speech is that the letter "does not propose a commercial transaction; it discusses a past transaction."  Def. Mem. at 22-23.  But that is not correct.  It is

undisputed that Defendant's debt collection letter proposes three options for Plaintiff to repay her debt:  with a single lump sum payment (with a large discount), with a six-month payment plan (with a smaller discount), or with a longer payment plan with lower monthly payments.  *See id.* at 4; Def. Letter.  The letter thus proposes a commercial transaction by offering different discounts in exchange for varying repayment terms and timeframes, and the letter therefore constitutes commercial speech subject only to intermediate scrutiny.

Several courts, including in the Southern District of California, have come to the same straightforward conclusion, recognizing that communications between debt collectors and debtors constitute commercial speech.  *See, e.g.*, *United States v. Central Adjustment Bureau, Inc.*, 823 F.2d 880, 881 (5th Cir. 1987) (*per curiam*) (referring to speech regulated by the FDCPA as "[d]eceptive commercial speech"); *Koby v. ARS Nat'l Servs., Inc.*, No. 09-cv-0780, 2010 WL 1438763, at *6 (S.D. Cal. Mar. 29, 2010) (applying commercial speech standards to debt-collection voicemails challenged under the FDCPA); *Mark v. J.C. Christensen & Assocs., Inc.*, No. CIV 09-100-ADM, 2009 WL 2407700, at *6 (D. Minn. Aug. 4, 2009) ("[Defendant] does not dispute that the activity regulated by the relevant provisions of the FDCPA . . . is commercial speech.").

### B.   The FDCPA Does Not Discriminate Based on Viewpoint.

Defendant next argues that even if its debt collection letter is commercial speech, the FDCPA should still be evaluated under strict scrutiny because the statute

amounts to impermissible viewpoint discrimination by favoring the perspective of one class of speakers (debtors) over another (debt collectors).  *See* Def. Mem. at 23-24.  This contention fails.  The FDCPA is viewpoint-neutral because its applicability to particular speech in no way turns on a speaker's viewpoint.

"A regulation engages in viewpoint discrimination when it regulates speech 'based on the specific motivating ideology or perspective of the speaker.'"  *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2744 (2019) (quoting *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1277 (9th Cir. 2017)).  The FDCPA's applicability does not depend on a debt collector's ideology, viewpoint, or perspective; instead, the FDCPA applies if a debt collector "use[s] any false, deceptive, or misleading representation" to collect a debt.  15 U.S.C. § 1692e; *see also id.* § 1692e(2)(A), e(10).  Thus, rather than preventing debt collectors from expressing a *perspective* about a debt, the statute targets debt collection *practices* that are misleading and abusive.  Because the FDCPA in no way prevents debt collectors from opining on a debt, the propriety of paying that debt, or debt collection generally, the statute does not engage in viewpoint discrimination.  *See Interpipe Contracting*, 898 F.3d at 900 (rejecting viewpoint discrimination challenge because the law "in no way limited" the regulated entities from "expressing their . . . views").

Nor is Defendant correct in arguing that the mere fact that the FDCPA prohibits certain practices by debt collectors, without prohibiting similar actions by debtors, means that the statute engages in viewpoint discrimination.  *See* Def. Mem.

at 23-24.  Legislative history shows that Congress limited the FDCPA's applicability to debt collectors not because Congress wanted to inhibit debt collectors from participating in a public debate, but rather because Congress found that debt collectors were the ones committing abusive debt collection practices.  *See* S. Rep. No. 95-382, at 2 ("The committee has found that debt collection abuse by third party debt collectors is a widespread and serious national problem. . . . [I]ndependent debt collectors are the prime source of egregious collection practices.").  In such circumstances, the Supreme Court has made clear that there is no constitutional problem when Congress limits the scope of a regulation to the class of speakers found to be the prime source of the harmful conduct Congress was seeking to prevent.

For example, in *R.A.V. v. City of St. Paul*, the Supreme Court stated that it would be perfectly proper for Congress to apply a regulation to a single industry, but not others, if the targeted industry presented special risks to the public that were not present in other industries.  *See* 505 U.S. 377, 388-89 (1992) ("[A] State may choose to regulate price advertising in one industry but not in others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First Amendment protection[)] . . . is in its view greater there." (citation omitted)).  Similarly, in *McCullen v. Coakley*, the Court declined to apply strict scrutiny to a regulation that applied only to abortion clinics and not to other entities. 573 U.S. 464, 481-82 (2014).  As the Court noted, it made sense for the legislature to limit the applicability of the regulation to abortion clinics because the legislature

was "respon[ding] to a problem that was, in its experience, limited to abortion clinics." *Id.* at 482; *see also id.* (when problems have a "limited nature," it is appropriate for a legislature "to enact a limited solution"). In other words, "[t]he First Amendment does not require States to regulate for problems that do not exist." *Id.* at 481. Indeed, "[w]hen selecting among various options for combating a particular problem, legislatures should be encouraged to choose the one that restricts less speech, not more." *Id.* at 482.

Those instructions are fully applicable here. Both common sense and congressional findings indicate that the potential for deceptive, misleading, or abusive conduct – and the resulting harm – flows from debt collectors to consumer debtors, not the other way around. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."). Congress was therefore fully justified in regulating only the speech of debt collectors, not debtors, because the harm that Congress sought to prevent stems entirely from that class of speakers. *See R.A.V.*, 505 U.S. at 388-89; *McCullen*, 573 U.S. at 481-82 (strict scrutiny not required simply because Congress declines to regulate a "problem[] that do[es] not exist").

Taken to its logical extent, Defendant's argument would imply that a court should apply strict scrutiny to every economic regulation that does not impose additional obligations on the class of persons whom the regulation is designed to

*protect*.  Defendant cites no case in support of this counter-intuitive proposition, and the Government is aware of none.  To the contrary, decades of Supreme Court cases have upheld, without applying strict scrutiny, economic speech regulations that apply only to the class of speakers deemed to present a substantial risk of harm.  *See, e.g.*, *United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993) (upholding ban on lottery advertising without applying strict scrutiny); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618 (1995) (upholding regulation of attorney solicitation under intermediate scrutiny); *N.L.R.B. v. Gissel Packing Co.*, 395 U.S. 575, 618-19 (1969) (upholding, without applying strict scrutiny, restrictions on employer's speech in the context of union elections).

In sum, the FDCPA provisions at issue are not subject to strict scrutiny.  They instead should be considered under the intermediate scrutiny standard that is applicable to commercial speech.

## III.   The FDCPA Passes Intermediate Scrutiny.

"Restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson*."  *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018); *see Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980).  "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity."  *Italian Colors Rest.*, 878 F.3d at 1176.  If the speech is misleading or concerns illegal activity, the *Central Hudson* inquiry is at an end.  *See Went For It*, 515 U.S. at 623-24 ("Under *Central Hudson*,

the government may freely regulate commercial speech that concerns unlawful activity or is misleading.").  If the speech does relate to lawful and non-deceptive activity, then *Central Hudson* requires that the regulation be narrowly tailored to a substantial state interest.  *Id.*

The FDCPA easily survives the *Central Hudson* test, and Defendant does not attempt to argue otherwise.  Because Plaintiff's claim rests on allegedly misleading language in Defendant's debt collection letter, the only provisions of the FDCPA at issue are those that prohibit misleading and deceptive debt collection practices.  Thus, Defendant's First Amendment challenge fails the threshold stage of the *Central Hudson* test because the law as applied here regulates only false or misleading commercial speech.  *See Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[O]ur cases make clear that the State may ban commercial expression that is fraudulent or deceptive without further justification[.]").  Thus, like other constitutional challenges to the FDCPA, Defendant's argument may be cursorily rejected at the first stage of the *Central Hudson* test.  *See Central Adjustment Bureau*, 823 F.2d at 881 (upholding FDCPA in an equal protection challenge, but noting in the alternative that "[d]eceptive commercial speech does not merit first amendment protection"); *Koby*, 2010 WL 1438763, at *6 (rejecting First Amendment challenge to a separate provision of the FDCPA because "[t]he messages specific to this action are not entitled to constitutional protection because . . . they are misleading").

Because the FDCPA provisions at issue are commercial speech, and because those provisions easily pass intermediate scrutiny, Defendant's constitutional challenge must be rejected.

## IV.    The FDCPA Would Also Pass Strict Scrutiny.

The FDCPA is plainly subject to intermediate scrutiny, which it easily passes, but the statute would in any event survive strict scrutiny.  Laws subject to strict scrutiny must be "narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).

Defendant does not dispute that preventing false and deceptive debt collection efforts is a "compelling interest," but instead argues only that "the governmental goal of the FDCPA . . . is to favor the speech of debtors over debt collectors."  *See* Def. Mem. at 25.  As discussed above, the purpose of the FDCPA is not to unfairly weigh in on any debate between debtors or debt collectors, but rather is to prohibit false, misleading, and deceptive means of collecting debts.  Defendant does not dispute that this properly-framed interest is compelling, and a court in the Southern District of California has recognized an essentially identical interest as compelling. *See Dabish v. Infinitelabs, LLC*, No. 13-cv-2048, 2014 WL 4352064, at *3 (S.D. Cal. Sept. 2, 2014) ("California has a compelling interest in protecting its residents from false, deceptive, or misleading advertising."); *cf. Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 462 (1978) (noting that appellant had "conceded" that an interest in preventing

fraud and undue influence in lawyer solicitation was "compelling," and stating that the interest was "legitimate and important").

Defendant next contends that even if the FDCPA advances a compelling interest, the statute is underinclusive and not the least restrictive means of furthering any such interest. *See* Def. Mem. at 25. Specifically, Defendant argues that the statute is underinclusive because it applies only to independent debt collectors and does not apply to debtors, original creditors, or governmental debt collectors. *Id.* at 25 & n.10. But there is no reason to believe that debtors present any substantial risk of abusive, misleading, or deceptive speech. And legislative history indicates that Congress specifically considered fully applying the FDCPA to original creditors but declined to do so because Congress found less of a need for such regulation. *See* S. Rep. No. 95-382, at 2 ("Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors . . . often are unconcerned with the consumer's opinion of them."); H.R. Rep. No. 95-131, at 7 ("[I]f a Federal agency . . . takes action against a major creditor, it usually has a deterrent effect throughout the industry. This is not the case with the debt collection industry."). Nor does exempting the government render the statute underinclusive, as it is unlikely that the government would engage in the types of abusive practices that Congress found problematic, *see* S. Rep. No. 95-382, at 2 ("Collection abuse takes many forms, including obscene or profane language, threats

of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights . . . .").[2]

Finally, Defendant argues that the FDCPA is not narrowly tailored because it makes debt collectors strictly liable for statutory violations.  According to Defendant, Congress could have used a less restrictive means by subjecting debt collectors to a lower culpability standard than strict liability.  *See* Def. Mem. at 25.  But a statute fails the least-restrictive-means test only if "less restrictive alternatives would be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve."  *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added).  Strict liability incentivizes debt collectors to implement procedures that minimize deceptive and abusive collection practices, so a less stringent standard would not be as effective in advancing the FDCPA's goals.  Thus, even if strict scrutiny applied to the FDCPA, the statute would still satisfy that standard of review.

## CONCLUSION

For the foregoing reasons, if it reaches the question, the Court should reject Defendant's constitutional challenge to the FDCPA.

---

[2] Furthermore, the government is not required to waive its sovereign immunity in order to avoid strict scrutiny.  *Cf. Mejia v. Time Warner Cable, Inc.*, No. 15-cv-6445 (JPO), 2017 WL 3278926, at *15 (S.D.N.Y. Aug. 1, 2017) (absence of government liability in a consumer protection statute was unproblematic, and "[t]o find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict private speech").

DATED:  November 1, 2019        By:  */s/ Joshua C. Abbuhl*_____
                                    JOSHUA C. ABBUHL

                                JOSEPH H. HUNT
                                Assistant Attorney General

                                LESLEY FARBY
                                Assistant Director, Federal Programs Branch

                                JOSHUA C. ABBUHL
                                Trial Attorney (D.C. Bar No. 1044782)
                                United States Department of Justice
                                Civil Division, Federal Programs Branch
                                1100 L St. NW
                                Washington, D.C. 20005
                                (202) 616-8366 (tel.)
                                (202) 616-8470 (fax)
                                Joshua.Abbuhl@usdoj.gov

                                *Attorneys for the United States of America*